SAMUEL JORDAN. v. THE STATE.

An appeal does not lie, from a judgment of the District Court, committing a witness to jail until he consents to answer certain questions, although the witness may have purged the contempt, to the satisfaction of the Court below, as appears by its judgment, and honestly refuses to answer, on the ground that the question is one which he is not bound by law to answer.

The writ of *habeas corpus* does not lie to revise the action of a Court of competent jurisdiction, in cases of commitment for contempt.

The granting of the writ of *habeas corpus* is not a matter of course, in this State. The Judge or Court to which application is made, must have "probable cause to believe" that the party applying for the writ, "is detained in custody without lawful authority." (Hart. Dig. Art. 1576.) The cause of his detention, if known, must be shown to the Court, upon the application; and unless it is made to appear, that there is probable cause to believe that the imprisonment complained of is without lawful authority, the writ cannot rightfully be granted.

There appears to be no distinction, so far as the right to an appeal or to the writ of *habeas corpus* is concerned, whether a commitment is by way of punishment for a wilful contempt, or by way of restraint to compel the performance of an act which the defendant honestly and without any intentional disrespect to the Court, refuses to perform, on the ground that he is not bound by law to do so; except, perhaps, that the question of jurisdiction of the subject matter might arise in the latter class of cases, but not in the former.

Appeal from San Augustine. Petition for a *habeas corpus,* alleging "that he is (as he is informed and believes) thus un- "lawfully imprisoned by and in pursuance of an order of the "Court now in session, because he refused this day to answer "questions concerning playing at cards, propounded to him by "the Grand Jury, then in session; and your petitioner avers "that the grounds upon which he so refused are, that he could "not answer said questions without furnishing evidence against "himself; and that his refusal to answer was not from any dis- "respect of the Court or its authority;" sworn to.

The petitioner was brought into Court, "this writ and return "thereon having been waived by all parties, inasmuch as the "Court and parties were cognizant of the facts of the case, to

"wit: that the said Jordan was imprisoned by order of the "Court, which required him to be imprisoned until he would "answer the questions propounded by the Grand Jury; and the "evidence having been submitted to the Court, and the Court "being satisfied that the witness does not intend a contempt, "but only to assert a legal right, as he supposes and conceives," &c., remanding the prisoner as before. Whereupon Jordan gave notice of appeal, and entered into recognizance to appear from Term to Term, to abide the judgment on the appeal. There was a statement of facts.

By express Statute in this State, appeals are allowed in all cases where a party is remanded on *habeas corpus;* but cases of contempt of Court are excepted from the general Statute of appeals in criminal cases.

Motion by the Attorney General to dismiss, for want of jurisdiction.

*Attorney General,* for motion to dismiss. There can be no mistaking the character of the offence, and of the consequent order of the Court, which lie at the foundation of this proceeding, notwithstanding the District Court seems, in its tenderness for the liberty of a citizen, and in its willingness to devolve its own peculiar responsibility upon this Court, to have concurred with appellant and his counsel, in forbearing to give a name to the offence and the commitment, since, without charging the substance of the one or the other, to give them their appropriate names, would have instantly been fatal to the proceeding by *habeas corpus*, and consequently to the right of appeal to this Court, which was palpably the object of all parties below. The offence of Jordan was a contempt of Court, and his commitment was in execution of a sentence of conviction for it. Now, while the District Court of San Augustine County could, in its original capacity and by its inherent power, have called its prisoner before it, by a simple order or direction to its bailiff, to allow him the opportunity of purging himself from the contempt, or of submission, or perhaps, to reinvestigate the

grounds of the conviction or to modify the punishment, how could it, any more than any other Court or Judge, issue this writ to revise, as on a writ of error, its proceedings in a matter of contempt? for such is the effect of a writ of *habeas corpus ;* (Hale, P. C. 584; case of J. V. N. Yates, Opinon by Judge Kent, 4 Johns. R. 371 ; Yates v. Lansing, Opinion of the Court of Errors of N. Y. by Platt, Senator, 9 Johns. 414.) Which latter Opinion overruled that of Senator Clinton in 6 Johns. in many points, and sustained that of Judge Kent in 4 Johns. and ended this controversy.

*O. M. Roberts, contra.* The act of the witness was the assertion of a constitutional right, by refusing to comply with an illegal order of the Judge. If that be so, it is not a contempt. The Judge is satisfied that there is no intentional contempt. But who is the judge of that? The old doctrine was that each Court is *to judge for itself,* nor am I aware that there has been any settled change, or variation from it. This must presuppose that the Court has acted within its authority, and on a person with the scope of its jurisdiction. We frequently must resort to extreme cases to illustrate a principle. Suppose that a Judge of the County Court should order the Clerk to tear up and burn the records of an obnoxious case in his office, and the Clerk should respectfully and firmly decline doing it. This is spread upon the record, and upon it a judgment is pronounced, ordering the Sheriff to imprison the Clerk, until he burns the record, cannot a District Judge relieve him ?

The rule then is to be understood with the qualification, that if the thing ordered to be done is clearly beyond the authority of the Court, or if the person, by his acts, has clearly not brought himself within the jurisdiction of the Court, any Court of general jurisdiction may relieve him. What excess of authority can be greater, than for a Court to force a witness to disclose his accomplices and all the facts (except his own acts) of a transaction in which he has participated, and which disclosure will point out the means of his own conviction, not possibly or probably, but certainly ?

These views are drawn and deduced from the very interesting and able Opinions in the cases of Yates v. The People, 6 Johns. R. ; and Yates v. Lansing, 9 Johns. R. ; and see particularly Opinion of Clinton and two cases of "Paty" and "Bushel," referred to therein, 6 Johns. R. 467–8.

Our laws have placed this act upon a different position from ordinary contempt, by specially enacting a punishment to enforce the orders of the Court.   "Any witness refusing to give "evidence may be committed to the county jail, until he shall "consent to give evidence." (Hart. Dig. 250, Art. 722.)   At the same session, (May, 1846, Hart. Dig. Art. 645,) "That said "Courts shall have power to fine not exceeding one hundred "dollars for contempt of Court, and may in their discretion, "imprison any person guilty of contempt, not exceeding three "days,"   The former Act is a specific mode of enforcing a particular duty, the latter of enforcing the rights of the Court.

In this case, the Court, whose order has been disobeyed, grants the writ of *habeas corpus*, hears the party and remands him, not as a punishment to inspire respect for his public authority, but to compel him to perform (in the opinion of the Judge) his duty as a citizen.

One of the great impediments to the use of this writ, in cases of contempt (especially by other Courts) is to be found in the contracted scope of the English Statute. (See 4 Bacon, 575.)  After reciting great delay, shifts &c., of officers in custody of subjects committed for criminal and supposed criminal matter, &c., whereby they had been detained in prison in such cases where by law they are liable, &c.

"For the prevention whereof and the more speedy relief of "all persons imprisoned for any such criminal or supposed crim- "inal matters, it is enacted," &c. proceeding to give the writ of *habeas corpus*.   In 6 Johns. R. 508, Senator Clinton notices this restriction of the operation of the English Statute, in contrast with the New York Statute, and the same may be done in contrast with our own, which provides, "That if any person detained in custody, whether charged with a criminal offence

or not," shall apply &c., and "show by affidavit or other evi-
" dence, probable cause to believe that he is detained in custody
"without lawful authority," the Court or Judge shall grant the
writ.

This is broad enough to include every contempt, where the
party can show probable cause to believe the imprisonment is
without authority ; that is, that the act was not a contempt.

Had this been an ordinary plain case of contempt, no proba-
ble cause could be shown, and in this way the law furnishes
every Court with ample means of protection, by refusing the
writ. And it is hardly to be presumed, that any other Court
will grant it without such probable cause.

The writ once granted, the appeal lies. It is regreted that
so important a question should have arisen upon a class of cases
so little entitled to favor.

WHEELER, J. It has been heretofore determined by this
Court, that an appeal will not lie from a judgment of the Dis-
trict Court punishing a witness, by fine and imprisonment, for a
contempt, committed in refusing to give evidence before the
Grand Jury. (Floyd v. The State, 7 Tex. R. 215.) The case
*ex parte* Kearny, (7 Wheat. R. 38,) was there cited, where it
was held by the Supreme Court of the United States, that the
punishment of a witness by imprisonment, for a contempt com-
mitted in refusing to answer questions, on the ground that his
answers would tend to criminate himself, being a criminal case,
was not within the appellate jurisdiction of the Court. And
the Court refused to grant a *habeas corpus*, on the ground of
a want of jurisdiction, it appearing that the party had been
committed for contempt by a Court of competent jurisdiction.

Commenting on the case of Crosby, Lord Mayor of Lon-
don, (3 Wils. 188,) Mr. Justice Story said, "It is most mani-
" fest from the whole reasoning of the Court, in this case, that a
" writ of *habeas corpus* was not deemed a proper remedy, where
" a party was committed for a contempt, by a court of competent
" jurisdiction ; and that, if granted, the Court could not inquire

"into the sufficiency of the cause of commitment. If, therefore, "we were to grant the writ, in this case, it would be applying "it in a manner not justified by principle or usage; and we "should be bound to remand the party, unless we were pre-"pared to abandon the whole doctrine, so reasonable, just, and "convenient, which has hitherto regulated this important sub-"ject. We are entirely satisfied to administer the law as we "find it, and are all of opinion, that, upon the facts of this case. "the motion ought to be denied." The Court said "The ar-"gument of inconvenience has been pressed upon us with great "earnestness. But where the law is clear, this argument can be "of no avail; and it will probably be found that there are also "serious inconveniences on the other side. Wherever power "is lodged, it may be abused. But, this forms no solid objec-"tion against its exercise. Confidence must be reposed some-"where; and if there should be an abuse, it will be a public "grievance, for which a remedy may be applied by the Legis-"lature, and is not to be devised by Courts of Justice." (7 Wheat. R. 44, 45.)

These observations, extracted from the Opinion of the Court in that case, are a sufficient answer to the argument of incon-venience, which has been urged in the present case. And the decision is an authority in point, against the right to the writ of *habeas corpus* in this case. There was no occasion to resort to the writ of *habeas corpus*, before the same Court which had cognizance of the contempt. And if that Court could grant the writ, any other Court or Judge, having authority to grant writs of *habeas corpus*, could grant it; and thus deprive the Court of the power which every Court must, of necessity, pos-sess, to be the judge of its own contempts. The decision of any Court, in a case of contempt, would thus become subject to re-vision, not only by an appellate Court, but by every other Court or Judge, having the authority conferred on him by law to issue the writ of *habeas corpus*. It must be perfectly clear, therefore, that since an appeal will not lie in cases of contempt, neither will the writ of *habeas corpus* lie to revise the action

of the Court in punishing for contempt. (And see Yarborough v. The State, 2 Tex. R.)

The granting of the writ of *habeas corpus* is not a matter of course. The Judge, or Court to which the application.is made, must have "probable cause to believe" that the party applying for the writ, "is detained in custody without lawful authority." (Hart. Dig. Art. 1576.) The cause of his detention, if known, must be shown to the Court, upon the application; and unless it is made to appear to the Court, that there is probable cause to believe that the imprisonment complained of is without lawful authority, the writ cannot rightfully be granted. In some of the States, (as New York and Pennsylvania,) th writ is grantable, of course, in all cases where the person is in actual confinement, under any color or pretence whatever. (N. Y. Act of 1818, Sec. 41, ch. 277; Penn. Act of Feb. 18th, 1785; 3 Yeates R. 263; 1 Serg. & Rawle, 356.) And in those States judicial discretion commences when the prisoner is brought before the Judge; and he acts under the same responsibility, and none other, than that which belongs to the exercise of ordinary judicial power. But our Statute evidently contemplates that the Judge shall exercise a proper judicial discretion in awarding the writ. Here, his discretion commenced with the application for the writ; and the Judge should, therefore refuse it, whenever it appears that the party will not be entitled to his discharge; and, consequently, that the awarding of the writ can be of no avail to him, upon its return; as, when he is a convict in execution; or is in confinement upon a legal commitment for an offence, which has already been adjudged by competent authority, upon *habeas corpus*, not bailable; or when he refuses to give the requisite bail, in a case which is of right bailable; or when he is detained for a contempt of Court. (Bouv. L. D. tit. "*Habeas Corpus*.") It follows that the writ was improvidently awarded in the present case.

The extent and application of the rule, which exempts a witness from giving evidence against himself; or, in other words,

answering questions, the answers to which will have a tendency to implicate him in a crime, was sufficiently considered in the case of Floyd v. The State, before cited; and the exposition of the rule there given, need not be here repeated.

We are of opinion that the writ of *habeas corpus* was improvidently and erroneously awarded; and that it did not authorize the Court to revise the order of commitment. And as the Court *a quo* had not jurisdiction to inquire into the sufficiency of the cause of commitment, the appeal cannot confer it upon this Court. The appellant cannot complain of the error in granting the writ; since it was at his instance; and, as the action of the Court upon the return of the writ, has rendered that error now immaterial, and there is no error in the judgment, which it is material to revise, the appeal will be dismissed.

Appeal dismissed.