### EX PARTE HANS L. DEGENER ET AL.

*No. 3982.   Decided December 19.*

1. **Habeas Corpus—Contempt of Court.**—On a *habeas corpus* in a case of commitment for contempt the court can examine only two questions; 1, as to the jurisdiction; 2, as to the form of the commitment. When the jurisdiction is undoubted and the commitment is in form and contains all that the statute requires, the prisoner must be remanded and the writ discharged.

2. **Same—Jurisdiction.**—Jurisdiction is of two kinds; 1, the power to hear and determine the particular matter; 2, the power to render the particular judgment which was rendered. If either of these two essential elements are lacking the judgment is fatally defective.

3. **Same—Power to Grant Relief on Habeas Corpus.**—The only ground on which any court, without some special statute authorizing it, will give relief on *habeas corpus* to a prisoner under conviction and sentence of another court, is the want of jurisdiction in such court over the person or the cause, or some other matter rendering its proceedings void.

4. **Same—Jurisdiction—Relief by Habeas Corpus—When Granted.**—If the commitment be against law, as being made by one having no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge. Again, if from any legal cause so appearing the court had no power to render the judgment it rendered, the writ of *habeas corpus* will lie, and the party will be discharged. Again, the party is entitled to *habeas corpus*, not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner. Again, when the court undertakes the imprisonment for an offense to which no criminality is attached, it acts beyond its jurisdiction. And again, if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so; and where the act is necessarily innocent or justifiable it would be preposterous to hold it a cause for imprisonment.

5. **Same—Personal Liberty.**—Personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus* by the superior court or judge· having the authority to award the writ.

6. **Statutory Rule.** —Article 153 of our Code of Criminal Procedure expressly provides, that "the writ of *habeas corpus* is intended to be applicable to all such cases

of confinement and restraint where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law."

7. **Grand Jury — Attachment for Witnesses.** — Where a grand jury of one court acting in good faith under their supposed authority conferred by article 401 of the Code of Criminal Procedure, which provides that "the foreman of the grand jury may issue a summons or attachment for any witness in the county where they are sitting," issued an attachment for the district judge of another court, without any directions as to the manner or time of serving the same, and the bailiff of said grand jury served the same while the judge was upon the bench holding his court, but in a quiet, respectful manner, and without interrupting the business of the court, *held*, that this did not constitute a contempt of the court on the part of the grand jury for which they would be liable to fine and imprisonment, and a judgment so holding is held to be unauthorized and void.

8. **Same — Purger of Contempt.** — Where the grand jury, after being cited to appear and show cause why they should not be fined for contempt, did so, and stated in their answer that they had issued the attachment in conformity with their duty as they understood it, under the law, and that no special instruction was given by them to their bailiff as to serving the same, *held*, that they could not be required, in order to purge themselves of any supposed contempt, to further state in express terms or so many words, "that they did not intend any contempt of court."

This was an original application for *habeas corpus*, on the part of the grand jury of Bexar County, to be discharged from a judgment imposing upon them a fine and imprisonment for supposed contempt of court. The facts are sufficiently stated in the opinion.

*C. Upson, Denman & Franklin*, and *Simpson & James*, for applicants, propounded the following propositions and authorities:

1. The grand jury had the legal right to issue the attachment, and acted judicially in so doing. Code Crim. Proc., art. 401; Id., chap. 2, title 7.

2. The grand jury are protected in the discharge of their duty, and can not be held liable in civil or criminal action for their finding, even though dictated by malice, or lacking any foundation in fact. 9 Am. and Eng. Encyc. of Law, 18; 1 Chitty Crim. Law, 323; Hunter v. Mathis, 40 Ind., 356; Ullman v. Arams, 9 Bush. (Ky.), 742; In re Loyd and Carpenter, 3 Clark (Pa.), 193; Turpin v. Booth, 56 Cal., 65; Bushell's case, Bacon's Abr., vol. 4, p. 572.

3. One judicial body has no jurisdiction to punish another judicial body for a judicial act by declaring such act a contempt.

4. Courts will inquire by *habeas corpus* proceedings whether the act called a contempt is a contempt. This is an inquiry as to jurisdiction. 9 Am. and Eng. Encyc. of Law, 220; People v. Lipscomb, 60 N. Y., 559; Burdette v. Abbott, 14 East., 1; Regina v. Patti, 2 Lord Raymond, 1105; Ex Parte Kilgore, 3 Texas Ct. App., 247; Holman v. Mayor, 34 Texas, 668; Ex Parte Ireland, 38 Texas, 344.

5. A grand jury is a constituent element of the court. "Within the sphere of their duties their power may be said to be omnipotent." Thompson & Merriam on Juries, pp. 651, 653, 670, secs. 595, 597, 615.

Additional authorities cited for applicants, viz.: Code Crim. Proc., art. 153; Church on Habeas Corpus, pp. 413, 418, 419, 438, 439, 447, 449, 490; Buchell's case, 13 Vaughan, 135; Id., 6 Howell's State Trials, 999.

*B. J. DeWitt*, County Attorney of Bexar County, *William Aubrey*, and *R. H. Harrison*, Assistant Attorney-General, for respondent, propounded the following propositions and authorities:

1. A grand jury has no power to issue an attachment until a subpœna has been disobeyed. Code Crim. Proc., art. 158. And which statute applies to the action of the grand jury. Penal Code, art. 26; Code Crim. Proc., art. 187.

2. Articles 491–494, in prescribing the manner of executing and returning an attachment and taking bond, etc., expressly include the grand jury.

3. The word "summons" as used in article 401 is not defined, but necessarily means subpœna, as that writ is defined in article 477, Code of Criminal Procedure.

4. An attachment is a warrant of arrest; it commands the officer to take the body of the witness. The right to issue this warrant is based on the faith that the witness is in contempt for disobeying the court's process, which is the foundation of the right to deprive him of his liberty. If article 401 empowers the grand jury to issue an attachment in the first instance, before a witness has disobeyed a subpœna, then it gives the grand jury a power no court in the land can exercise, and the law never contemplated that one arm of a court should have and exercise a greater authority than the power which created it, and under whose control and instructions it discharges its functions. The last paragraph of article 498 seems to mean that in all other cases save and except those mentioned in that article disobedience to a subpœna is necessary to the issuance of an attachment.

5. The Court of Appeals can not discharge on *habeas corpus* a prisoner committed for contempt unless the judgment for commitment is void. The only instances in which the Supreme Court or Court of Appeals have ever discharged a prisoner on *habeas corpus* or appeal were in the following cases: 1. Where the court was without jurisdiction. 2. Where the court exceeded the penalty prescribed by the statute. 3. Where the judgment failed to fix the penalty. 4. Where the fine imposed was made payable to the prosecuting witness. 5. Where the contempt was committed beyond the presence of the court, and judgment rendered without citation to the accused.

The above will be found in the following cases: Smith v. The State, 5 Texas, 578; Ex Parte Ireland, 38 Texas, 356; Jordan v. The State, 14 Texas, 436; Floyd v. The State, 7 Texas, 216; Casey v. The State, 25 Texas, 380; Edrington v. Predham, 65 Texas, 613; Crow v. The State, 24 Texas, 12; Ex Parte Kilgore, 3 Texas Ct. App., 247; The State v. Sparks, 27 Texas, 705.

In each of the cases mentioned the decision was based upon the fact that the judgment was void from want of jurisdiction.

6. In cases of contempt, the court before whom the contempt was committed is the tribunal that can judge of its sufficiency. No cases can be found in our own State or elsewhere where a party in custody for contempt has ever been discharged by any court on *habeas corpus* or appeal upon the ground that the act or omission did not constitute a contempt. All the authorities hold that every court must be the sole and exclusive judge of its own contempts. This is very clearly stated by Judge Bell, in the case of Casey v. The State, 25 Texas, 287.

The writ of *habeas corpus* does not lie to revise the action of a court of competent jurisdiction in cases of commitment for contempt. Jordan v. The State, 14 Texas, 435; The State v. Harwood, 37 Texas, 340, Ex Parte Kearney, 7 Wheat., 38; Yates v. Lansing, 9 N. Y., 416.

Infinite confusion and disorder would follow if courts could by *habeas corpus* examine and determine the contempts of others. Robb v. McDonald, 4 Am. Rep., 214. In order to be revised it must be absolutely void. Id.

Punishment for contempt is matter in the discretion of the court before which it is committed, and this discretion will not be controlled except in cases of flagrant abuse. Harwood v. Durund, 91 Am. Dec., 767.

The only cases wherein a party fined for contempt has ever been discharged is in a case where, for constructive contempt, the fine was made payable to the plaintiff in the execution. Ex Parte Robertson, 27 Texas Ct. App., 633.

The two reports of the grand jury, when taken in connection with their answer in this case, show conclusively that disrespect to the court was intended at the time they issued the writ, as will be seen from those reports, which are now on file in the court; that they cast reflections upon the court, for which they should have been fined. In the case of Smith v. The State, 5 Texas, 578, a practicing attorney was not only fined, but his name stricken from the roll of attorneys, for a similar but less grave offense.

Upon motion to discharge upon *habeas corpus*, where the commitment was made by a court of competent jurisdiction, there is no authority to discharge the party upon the ground that the court erred in its judgment of the law. Ex Parte Adams, Am. Dec., 235. The answer must be consistent and creditable with itself, and if he states facts which

are inconsistent with his avowed purpose and intention, the court will be at liberty to draw its own inferences from the facts stated.   1 Fed. Rep., 737.

7.   The court is to decide whether the answer purges the contempt or not.   Although there is error, the judgment will not be disturbed. Casey v. The State, 25 Texas, 14.

WHITE, PRESIDING JUDGE.—This is an original application to this court for a writ of *habeas corpus* by twelve parties lately composing the grand jury of the Thirty-seventh Judicial District Court of Bexar County, applicants alleging that they are illegally restrained of their liberty by the sheriff of Bexar County under certain writs, warrants, and process issued by the District Court of the Forty-fifth Judicial District of Bexar County upon a judgment for contempt, which writs and judgment they claim are absolutely void; and they pray this court to discharge them from the illegal restraint and custody that has thus been inflicted upon them.

In pursuance of this application, and after an inspection of the petition and exhibits thereto attached, this court at a former day of this term granted the writ as prayed for, and the case has been submitted for determination upon an agreed statement of facts prepared by and between counsel for applicants and the Assistant Attorney-General.

In brief, the *gravamen* of the supposed contempt consists in the issuance of a writ of attachment for witnesses by the grand jury of the Thirty-seventh Judicial District Court of Bexar County, which writ of attachment contained the names of several witnesses, and among them that of Hon. W. W. King, judge of the Forty-fifth Judicial District, who was also holding his court in Bexar County at the time of issuing the said writ; and that said attachment was served upon him by the bailiff of said grand jury while he was upon the bench presiding over his court and engaged in the trial of a cause pending in his court.

As to the manner of the service of said writ of attachment, the affidavit of the bailiff of the grand jury states, in substance, that the attachment was issued on the 14th of November and handed to him by the foreman of the grand jury; that the grand jury adjourned before any of the witnesses were summoned on that day; that affiant kept the writ of attachment until about the hour of 11 a. m. on November 16 or 17, 1891; that affiant served the same upon Hon. W. W. King; "that affiant entered the court room and found an attorney addressing the court, and waited until the attorney had ceased to address the court and had taken his seat, whereupon affiant in a respectful manner, and without any thought of committing a contempt, quietly went to the side entrance of the bench and handed the summons to Judge King, stating at the same time, and in a respectful tone and manner, that 'any time would do for his appearance by 2 o'clock that afternoon;'

that Judge King asked him who was the foreman of the grand jury; that affiant answered, 'Mr. Degener;' that Judge King then said, 'Tell Mr. Degener that I wish to see him, and I will have him put in jail for contempt of court;' whereupon affiant retired in a respectful manner, and carried Judge King's message to Mr. Degener.'' Affiant further says, that "neither the foreman of the grand jury nor any member caused him to serve said summons on Judge King while he was on the bench, nor did any of them intimate to him that he should approach Judge King while he was on the bench.''

It is further shown by the record, that Judge King, in obedience to the writ of attachment thus served upon him, did voluntarily appear before the grand jury on the 17th of November, two days after the issuance of the attachment, to testify to matters pending before that body. The above and foregoing are in brief the essential facts as same are presented to us in the agreed statement before us.

Our statute provides, that "the foreman of a grand jury may issue a summons or attachment for any person in the county where they are sitting, which summons or attachment may require the witness to appear before them at a time fixed or forthwith, without stating the matter with respect to which the witness will be called to testify.'' Code Crim Proc., art. 401.

Notwithstanding this provision of the statute, it is insisted by the attorneys for respondent that an attachment nevertheless could not legally be issued by the grand jury until after the witness had been first subpœnaed and failed to appear and testify as provided in articles 487 and 488 of Code of Criminal Procedure. In the view we take of the case, we deem it unnecessary to discuss or determine this point. The record is silent as to whether a prior subpœna had been issued; but conceding that the action of the grand jury in issuing the attachment where there had been no disobedience of a prior subpœna was unauthorized, still we do not think, in the light of the record, that such unauthorized action could and would constitute *per se* a contempt of the judge of the Forty-fifth Judicial District; nor do we understand that the latter claimed at the time that the supposed contempt consisted in or was occasioned by the unauthorized issuance of the writ, but, on the contrary, that the contempt was predicated by him mainly upon the fact of the time, place, mode, and manner of its service.

It is clear from their answer that the grand jury thought that they had the right to issue the attachment, whether that right existed in law at the time of its issuance or not. They cite the law upon which they based their authority, and if they were mistaken in their construction of the law, that mistake of judgment as to what the proper construction was can not and should not be imputed to them as a crime.

We know of no statute or rule of law which exempts a district judge from liability to be legally summoned or attached as a witness before a

grand jury. Certainly no such exemption is provided in the article above quoted. There can be no question, however, but that the arrest of a district judge by virtue of a writ of attachment, while he is upon the district bench presiding over his court, whereby, if such be the result, the proceedings of his court are interfered with, obstructed, or stopped, would be a most gross, unwarranted, and illegal exercise of the powers conferred upon the grand jury or any other tribunal authorized to issue process for witnesses. It would be a gross contempt of the authority and dignity of the judge, as well as the court over which he presides, and one which he would have the power summarily to resent and punish as a contempt. Independent of the inherent right which courts have to protect and maintain their dignity and authority, our statute expressly confers upon them the power to punish for contempts. Rev. Stats., art. 1120; Jordan v. The State, 14 Texas, 441.

Mr. Thompson, in his work on Trials, says: "It is necessary to the due exercise of the functions of a judicial court that the judge should possess the power to preserve order while conducting judicial proceedings, to enforce obedience to the lawful orders and process of the court, and consequently to punish disobedience of the same. It is therefore a general principle of common law, subject to statutory limitations, in this country, that every superior court of record has the inherent power to punish contempts committed in its presence and against its authority; that every such court is the exclusive judge of such contempts. The result of this doctrine is, that superior courts of record are not bound to certify upon their record the facts of which a contempt consists, but that every other court or judge, where the validity of a commitment for contempt by such a court is drawn in question, is bound to presume that the facts were sufficient to warrant it." This rule of common law has been adopted in many instances in this country cited by the learned author in connection with his text.

Another rule announced by the same learned author is: "An order committing a person for such contempt is in the nature of a judgment. The person so committed is committed in execution, and if the court have jurisdiction so to commit him, and if the contempt is plainly charged in the warrant of commitment, he will no more be relieved on a *habeas corpus* than he would be if he were committed in execution of a judgment founded upon a verdict in an ordinary criminal prosecution. It will appear from the general current of the decisions which declare this rule that the inquiry upon *habeas corpus* is ordinarily limited to the question whether the court which made the order of commitment had jurisdiction in the premises. If jurisdiction appear, the rule expressed above, that every superior court of record and every legislative body of a sovereign State is the exclusive judge of the contempts committed in its presence or against its process or authority, forbids all interference on the part of other tribunals, by means of the

writ of *habeas corpus* or otherwise, except in plain cases of excess of jurisdiction.   The question concerns the power of one court to judge of the jurisdiction of another court.   This power will be freely exercised where the court which issued the *habeas corpus* is a court having appellate or superintending jurisdiction over the court which made the commitment; and this consideration will explain the fact that many such courts, while professing to limit their inquiry to the jurisdiction of the inferior court, push such inquiry much further than one court would go in inquiring concerning the jurisdiction of a co-ordinate court."   Thomp. on Trials, secs. 141, 142.

Upon this subject another author remarks, in keeping with the above: "The writ of *habeas corpus* is a collateral remedy, and under the well established rule that a judgment of a court of competent jurisdiction, upon a matter within that jurisdiction, can not be collaterally impeached, it results that, no question of jurisdiction being raised or involved, a conviction or commitment for contempt can not be reviewed by means of this writ; for it is well settled that an order for committal for contempt is in the nature of a judgment, and the person committed thereunder is committed in execution.   If, therefore, the court had jurisdiction of the person of the defendant and of the subject matter out of which the alleged contempt arises, he can no more get relief on *habeas corpus* than he could if his committal had been in execution of a judgment founded upon a verdict of an ordinary prosecution for crime. If the court had jurisdiction, the rule making every superior court of record or legislative body the exclusive judge of contempts against its own authority and dignity closes the door to a review by this writ, except in such cases where excess of jurisdiction is clearly apparent.   It therefore becomes clear that the question of relief or no relief in these cases, by means of the writ of *habeas corpus*, depends upon the power of the court issuing the writ to inquire into and judge of the extent and limits of the jurisdiction of another court.   Upon this subject the adjudged cases, apparently so harmonious in their statement of the general rule, are, upon a closer examination, perplexing and inconclusive. In cases where the court issuing the writ is clothed by law with appellate or superintending jurisdiction over the tribunal which committed the petitioner there seems to be comparatively little difficulty in reconciling the adjudications; but even in such cases many decisions are found where the inquiry was pushed to an extreme limit.   The United States Supreme Court, however, declines to push this doctrine to such extreme lengths.   Thus in Ex Parte Reed (100 U. S., 13, 23), Mr. Justice Swayne states the rule as follows: 'A writ of *habeas corpus* can not be made to perform the functions of a writ of error.   To warrant the discharge of a prisoner the sentence under which he is held must be not merely erroneous and voidable, but absolutely void.'"   Rap., Contempts, sec. 155.

Further on (sec. 157) the same author says: "On a *habeas corpus* in a case of commitment for contempt the court can examine only two questions: first, as to jurisdiction; and secondly, as to the form of commitment. When the jurisdiction is undoubted, and the commitment is sufficient in form and contains all that the statute requires, the prisoner must be remanded and the writ discharged."

As we understand it, the above and foregoing authorities state the rules with regard to the scope, extent, and authority to be exercised under the writ of *habeas corpus* as the same formerly, and perhaps up to a comparatively recent period, obtained with almost unbroken uniformity in most, if not all, the courts of America.

But "jurisdiction is of two kinds: first, the power to hear and determine the particular matter, and to render some judgment thereon; and secondly, the power to render the particular judgment which was rendered. The idea of the early courts seems to have been that jurisdiction of courts consists entirely of the former of these powers." 5 Crim. Law Mag., p. 162, sec. 10. See, also, section 141, Rapalje (Contempts), citing Ex Parte Kearney, 7 Wheat., 38, and numerous other authorities.

Such was the doctrine also announced by the Supreme Court of the United States in The State v. Commonwealth, 12 Pet., 718; Grignon v. Astor, 2 How., 338; Ex Parte Watkins, 3 Pet., 193–203; Ex Parte Parks, 93 U. S., 18; In re Callicot, 8 Blatchf., 89; People v. Shea, 3 Parker Crim. R., 562. And this seems to have been the doctrine as formerly announced by the Supreme Court of our own State in Jordan v. The State, 14 Texas, 441; Casey v. The State, 25 Texas, 380; and The State v. Thurmond, 37 Texas, 340.

Upon the second proposition above stated as to jurisdiction, to-wit, "the power to render the particular judgment which was rendered," there has been much conflict of opinion. In the case of Ex Parte Siebold, 100 United States, 371, Mr. Justice Bradley says: "The only ground on which this court, or any court, without some special statute authorizing it, will give relief on *habeas corpus* to a prisoner under conviction and sentence of another court, is the want of jurisdiction in such court over the person or the cause, or some other matter rendering its proceedings void. * * * It is stated, however, in Bacon's Abridgment, probably in the words of Chief Baron Gilbert, that 'if the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge.' Bacon's Abr., 'Habeas Corpus,' b. 10. The latter part of this rule, when applied to imprisonment under conviction and sentence, is confined to the cases of clear and manifest want of criminality in the matter charged, such as in effect to render the proceedings void. The authority usually cited under this head is Bushell's case, decided in 1670. There twelve jury-

men had been convicted in the Oyer and Terminer for rendering a verdict (against the charge of the court) acquitting William Penn and others, who were charged with meeting in conventicle. Being imprisoned for refusing to pay their fines, they applied to the Court of Common Pleas for a *habeas corpus;* and though the court, having no jurisdiction in criminal matters, hesitated to grant the writ, yet, having granted, they discharged the prisoners on the ground that their conviction was void, inasmuch as jurymen can not be indicted for rendering any verdict they choose. The opinion of Chief Justice Vaughan in the case has rarely been excelled for judicial eloquence. T. Jones, 13 Vaughan, 135; 6 How. State Tr., 999."

In a recent and valuable work, Brown on Jurisdiction (section 98), speaking of the matter of jurisdiction on *habeas corpus* and the nature and extent of the writ, the rule is asserted, that "if from any legal cause so appearing the court had no power to render the judgment it rendered, the writ of *habeas corpus* will lie;" citing In re Coy, 127 U. S., 731; Ex Parte Lange, 18 Wall., 163; Ex Parte Rowland, 104 U. S., 604. See, also, Ex Parte Yarbrough, 110 U. S., 651.

In Nielsen, Petitioner, 131 United States, 184, it is said: "A party is entitled to a *habeas corpus* not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner. As said by Chief Baron Gilbert in a case quoted in Ex Parte Parks, 93 United States, 18, 22: "If the commitment be against law, as being made by some one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the courts are to discharge." Lord Hale laid down the doctrine in almost the same words. 2 Hale, P. C., 144.' And why should not such a rule prevail *in favorem libertatis?*

In Ex Parte Siebold, *supra*, Judge Bradley said: "Personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus* by the superior court or judge having authority to award the writ."

Church on Habeas Corpus, section 152, quoting from In re Corryell, 22 California, 179, says: "When the court undertakes the imprisonment for an offense to which no criminality is attached, it acts beyond its jurisdiction."

Mr. Brown, whose work on jurisdiction of courts we have already had occasion to cite above, which work is the latest upon the subject (it having been issued this year—1891), discussing what facts may be shown on return of *habeas corpus* in aid of the plaintiff, says of such inquiries of jurisdiction: "If, however, the judgment or order of commitment is harsh, excessive, and unjust, the court may inquire into the facts, and admit the plaintiff to bail in a proper cause, and in

some instances discharge him." Section 109. He further says (section 110): "There are three essential elements necessary to render a conviction valid. These are, that the court may have jurisdiction over the subject matter, the person of the defendant, and *the authority to render the particular judgment. If either of these essential elements are lacking, the judgment is fatally defective.*" (Italics ours.) In a note to the text he cites Church on Habeas Corpus, section 103, as follows: "To determine, however, when the court rendering the judgment has jurisdiction of the person and subject matter, and to render the particular judgment assailed, is a question difficult of solution. The decisions of the courts are not uniform or harmonious on this point, but the later decisions of very high authority go to show that jurisdiction of the person and of the subject matter are not conclusive; but the jurisdiction of the court to render the particular judgment in question is a proper subject of inquiry. If any of these three elements are lacking the judgment is fatally defective, and the prisoner held under it may be released on *habeas corpus.*" Citing the following authorities: People v. Liscomb, 60 N. Y., 559; In re Petty, 22 Kans., 477; Ex Parte Farnham, 3 Colo., 545; Ex Parte Virginia, 100 U. S., 339; Kirby v. The State, 62 Ala., 51; Ex Parte Simmons, Id., 416; Ex Parte Yerger, 8 Wall., 85; Ex Parte Williams, 1 Wash. T., 240; Ex Parte Gibson, 31 Cal., 619; Ex Parte Smith, 2 Nev., 338; Ex Parte Siebold, 100 U. S., 371; People v. Foster, 104 Ill., 156; People v. Cavanagh, 2 Parker Crim. R., 650; The State v. Fenderson, 28 La. Ann., 82; Ex Parte Hartman, 44 Cal., 32; Ex Parte Parks, 93 U. S., 18; Petition of Semler, 41 Wis., 517; Ex Parte Schwartz, 2 Texas Ct. App., 74; Ex Parte McGill, 6 Texas Ct. App., 498; Ex Parte Boland, 11 Texas Ct. App., 159; In re Truman, 44 Mo., 181; Ex Parte Mess, 12 Pac. Coast Law J., 279; Ex Parte Lange, 18 Wall., 163; Ex Parte Kearney, 55 Cal., 212; Ex Parte J. C. H., 17 Fla., 368; Ex Parte Bulger, 60 Cal., 438; Miller v. Snyder, 6 Ind., 1; Petition of Crandall, 34 Wis., 177; Ex Parte Smith, 2 Nev., 338.

In People v. Hackley, 24 New York, 74, Denio, J., delivering the opinion, says: "As a general rule, the propriety of a commitment for contempt is not examinable in any other court than the one by which it was awarded. This is essentially true when the proceeding by which it is sought to be questioned is in a writ of *habeas corpus,* as the question on the validity of the judgment arises collaterally, and not by way of review. The *habeas corpus* act, moreover, declares that where the detention of the parties seeking to be discharged by *habeas corpus* appears to be for any contempt plainly and specifically charged in the commitment ordered by a court of competent jurisdiction, he shall be remanded to the custody in which he was found. But this rule is, of course, subject to the qualification that the conduct charged as constituting the contempt be such that some degree of delinquency or mis-

behavior can be predicated upon it, for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so. The question whether the alleged offender really committed the act charged will be conclusively determined by the order or the judgment of the court; and so with equivocal acts which may be culpable or innocent, according to the circumstances; but where the act is necessarily innocent or justifiable it would be preposterous to hold it a cause of imprisonment."

In the case of Holman v. Mayor, 34 Texas, 638, Evans, P. J., says: "The power of the Supreme Court and district judges, and of the District Court and the judges, to issue writs of *habeas corpus* and to exercise a general superintendence and control over inferior tribunals, is granted in express terms in the Constitution, and it requires no aid of the legislative department to enable either court on *habeas corpus* to inquire into the validity of a commitment by an inferior court, and to discharge from imprisonment if it plainly appear that the commitment was void."

. Our Code of Criminal Procedure, article 153, expressly provides, that " the writ of *habeas corpus* is intended to be applicable to all such cases of confinement and restraint where there is no lawful right in the person exercising the power; or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law." This statute is certainly very broad and comprehensive in terms. It does not limit the application of the writ to an inquiry merely into the lawful right of the person exercising the power to commit one restrained of his liberty; but even where such power exists the manner or degree in which it is exercised is equally a subject matter embraced in proceedings under the writ. If we can inquire into "the manner or degree," as well as the exercise of the power to confine and restrain by virtue of this writ, then it seems clear that we are empowered to determine whether or not the court had jurisdiction to render the particular judgment which it has rendered in the case, or whether in fact the particular matter upon which its judgment is based was or was not such contempt as authorized the parties to be imprisoned therefor.

As we have heretofore stated, the grand jury were empowered by law to issue the writ of attachment. By its service upon the judge, as shown in the record, the proceedings in his court, over which he was at the time presiding, were in no manner impeded or delayed, much less interfered with or stopped. He was not taken nor attempted to be taken in custody by the officer and carried away from his court.

The grand jury, after being cited to appear and show cause why they should not be fined for contempt, did so, and stated in answer to the citation that they had simply issued the attachment in conformity with their duty as they understood it under the law, and that "no special

instruction was given said bailiff or any bailiff at any time as to the manner of serving the process." We know of no law which would have required them, in addition to this, to state in express terms, or so many words, that they "did not intend any contempt of court" before they could be considered to have discharged or purged themselves of any such supposed contempt. Relators having committed no contempt nor apparent contempt, were not bound to purge themselves.

In addition to this, the affidavit of the bailiff, heretofore quoted, states, that "neither the foreman of the grand jury nor any member authorized him to serve said summons on Judge King while he was on the bench, nor did any one of them indicate that he should approach Judge King for that purpose while he was on the bench." Under the facts as shown, if any contempt was committed by any one of the parties named in this record, it occurs to us that it was committed by the bailiff of the grand jury, who seems to have acted alone upon his own motion, so far as the service of the attachment was concerned.

We are of opinion that the answer of the grand jury showed that their action in the matter was justifiable in law, to-wit, the issuing of the writ, which was all they did in connection with the supposed contempt.

Under the facts in the case, we do not believe the court had jurisdiction to render the judgment it did render, fining the relators $50 for contempt of court, and arresting and imprisoning them until said fine and costs were paid. We are further of opinion, upon the law as it appears to be now well settled, that we have the authority, which we do now exercise, to declare that the judgment was unauthorized and void, it being such as should not have been rendered, for which reasons the relators will be discharged from any further liability by virtue of and on account of the same.

Ordered accordingly.

*Relators discharged.*

Judges all present and concurring.