**Ex parte Michael John RENIER.**

**No. 69728.**

Court of Criminal Appeals of Texas, En Banc.

July 1, 1987.

Candelario Elizondo, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Bill Adkins Camp, Asst. Dist. Atty., Houston,

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPLICANT'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission of this application for habeas corpus in an unpublished opinion, 724 S.W.2d 393, we found that our determination to set the cause was improvident in that while the indictment upon which the conviction is based may be void it has been dismissed upon applicant's successful completion of probation pursuant to former article 42.12, § 7, V.A.C.C.P. and, therefore, the relief prayed for had already been granted.

In his motion for rehearing applicant stoutly contends with supporting authorities: "An indictment which fails to allege all elements of an offense may be attacked for the first time by post-conviction Writ of Habeas Corpus." We granted the motion to consider whether that general rule applies in the situation presented here. The application will be dismissed without prejudice.

In his application for writ of habeas corpus applicant alleges facts showing his conviction for felony theft and his being placed on probation for three years in cause no. 216199; that "the indictment upon which this conviction was based is void" for the reason asserted and authorities cited; that a void indictment may be attacked "by post conviction writ of habeas corpus," citing cases. His prayer for relief is consistent with his allegations, *viz:*

> "Wherefore, applicant prays this application be granted, the trial court order a copy of the indictment in cause number 26199 [sic] be forwarded to the Court of Criminal Appeals and the Court of Criminal Appeals issue an order *dismissing the indictment* in cause number 216199." [1]

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

■ Moreover, convicting court, district clerk and parties thereafter treated the matter as a postconviction writ proceeding. In short, this proceeding purports to be a postconviction application for writ of habeas corpus pursuant to Article 11.07, §§ 2 and 3, V.A.C.C.P. However, for reasons about to be given, the application is really not what it purports to be, and this Court lacks authority to grant relief under Article 11.07.

In the first place, Article 11.07, §§ 2 and 3 supra, applies only "after final conviction in any felony case," *id.,* § 2(a). Here because applicant was granted probation, there is no final conviction. Since he satisfactorily fulfilled conditions of his probation, the convicting court terminated the period of probation, permitted applicant to withdraw his plea, dismissed the indictment and set aside the judgment of conviction, thereby releasing applicant from all penalties and disabilities, as provided in former article 42.14, § 7. Thus, this is not a habeas corpus proceeding authorized by Article 11.07, § 2(a).

Secondly, when the application is made after conviction Article 11.07 is concerned with "confinement." Upon examination of such an application the judge of the convicting court has a duty to decide whether there are controverted, unresolved facts "material to the legality of the applicant's *confinement.*" *Id.,* § 2(c) and (d). After the record is reviewed here, this Court "shall enter its judgment remanding the petitioner to *custody* or ordering his *release,* as the law and facts may justify." *Id.,* § 3. Finally the procedure prescribed "shall be exclusive and any other procedure shall be void and of no force and effect *in discharging the prisoner.*" *Ibid.*

In this cause applicant is not confined; indeed, his complaint is that on account of his conviction and probated sentence he is "being deprived of my ability to obtain gainful employment in my choice of careers" and "to obtain bonding for positions of trust."

■ Nevertheless, applicant points out that this Court has granted postconviction habeas relief when an applicant is not in confinement. He relies principally on *Ex parte Ormsby,* 676 S.W.2d 130 (Tex.Cr. App.1984), in which the Court expressly notices, "Applicant was not in custody at the time he filed his application." *Id.,* at 131.[2] Somewhat like *Ormsby,* he must be asserting his prior discharged conviction has legal collateral consequences amounting to restraint in his personal liberty. *Ormsby,* at 132. We find that to the extent it suggests Article 11.07, §§ 2–3, authorizes a postconviction challenge to a prior conviction when applicant is not then and there in confinement, but alleged to be only under "restraint," *Ormsby* will not be followed.

The opinion in *Ormsby* draws heavily on the concurring opinion of Judge Odom in response to the dissenting opinion of the late Judge Douglas, in *Ex parte Guzman,* 551 S.W.2d 387, 388 ff (Tex.Cr.App.1977). *Ex parte Guzman* is, as Commissioner Green identified it, "an application for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C.C.P." That is, of course, a postconviction writ to test "the legality of the applicant's confinement." Article 11.-07, § 2(c) and (d).

Applicant in *Guzman* had alleged his conviction was void in that his probation had been revoked at a hearing when he was without, and had not waived, representation by counsel. The judge of convicting court "denied" the application upon his finding that "the application for writ of habeas corpus was *moot,* since petitioner was no longer held in custody by reason of that conviction, said conviction since being

---

**2.** He also cites *Ex parte McClain,* 623 S.W.2d 140 (Tex.Cr.App.1981) and *Ex parte Pousson,* 599 S.W.2d 820 (Tex.Cr.App.1980); to them we add the recent decision in *Ex Parte Oliver,* 703 S.W.2d 205 (Tex.Cr.App.1986). However, while the opinion in *Oliver,* supra, fails to mention it, the record clearly reveals that at the time he filed and when the Court ruled, the applicant there was then confined in the Texas Department of Corrections. Applicants in *Ex parte McClain* and *Ex parte Pousson* were similarly situated. Since they support the proposition that confinement is a prerequisite to an application for postconviction relief under Article 11.07, none of the three cases gives strength to the opinion in *Ex parte Ormsby,* supra.

discharged." *Id.,* at 388.[3] When the record reached here the Court remanded the cause for further proceedings "to determine the merits of petitioner's contentions" because "prior convictions that had been discharged may have serious collateral consequences to a criminal defendant, thus the *mootness doctrine* cannot prohibit a collateral attack. [Cited cases omitted]." *Ibid.* (Emphasis in original).

When the cause returned here, largely upon findings by the convicting court that petitioner was indigent and did not have or waive representation by counsel, for the Court Commissioner Green found they were corroborated by records and held that "the order of revocation has been rendered void by petitioner's showing that he was denied his right to counsel at that proceeding, [cases cited in which every applicant was then confined]." Accordingly, the writ was granted and the order of revocation set aside.

In dissent, based on much federal authority Judge Douglas opined that being in custody for the very conviction under attack is jurisdictional under Article 11.07; he charged, "Before today's holding there was no authority to the contrary." *Id.,* at 390–391. Though not specifically mentioned in the opinion approved by the Court, in his response Judge Odom regarded significant the fact that at the time Guzman was then confined in TDC under another conviction, and observed that Judge Douglas had not distinguished an apposite decision. See note 1, p. 389.[4] However, Judge Douglas did point out that in *Ex parte Langston,* supra, applicant was confined when he filed his application, thereby invoking habeas jurisdiction. He said similarly situated was applicant in *Ex parte Burt,* 499 S.W.2d 109 (Tex.Cr.App.

1973). While not all that clear the opinion may be so interpreted, *viz:* "Initially we must determine whether the question raised by this petition is moot, by reason of the fact that petitioner has been released from confinement in [TDC]." Finding that matter was not moot and although he had been released, the Court granted the writ "for the purpose of securing him against further legal consequences arising from the void conviction." *Id.,* at 110.

Thus we see that before and in *Ex parte Guzman* every Article 11.07 habeas applicant was under some character of confinement—at least at the time he filed his application. In that circumstance the Court had no compunction about granting relief from collateral legal consequences of a void conviction.

In further challenging the Douglas dissent Judge Odom noticed Judge Douglas conceded that "sufficient collateral consequences flow from the discharged conviction [to defeat mootness]," and then undertook to chastise the dissenting opinion for wanting to deny petitioner "a forum to raise his viable claim by finding those very collateral consequences that defeat mootness are insufficient to support jurisdiction." But nowhere in his concurring opinion does Judge Odom disagree with the opinion approved by the Court setting aside the void order revoking probation; to the contrary, his dissent is premised on the proposition that because applicant was confined under another conviction the Court had habeas jurisdiction.[5] Then he switched the subject from "confinement" to "restraint." *Id.,* at 389. He goes on to cite "the rules governing habeas corpus" in Chapter 11 of the Code of Criminal Proce-

---

**3.** Original emphasis by Commissioner Green.

**4.** Applicant in the case cited, *Ex parte Langston,* 510 S.W.2d 603 and 511 S.W.2d 936 (Tex.Cr. App.1974), had discharged his sentence imposed after revocation of probation, but was then confined in TDC on a subsequent conviction. Finding the conviction void for lack of counsel at revocation, the Court granted the writ "for the purpose of securing him against further legal consequences arising from the void conviction." 511 S.W.2d at 937.

**5.** In every case cited in *Ormsby,* at 131, for its statement that "mootness cannot prohibit a collateral attack if prior discharged convictions may have collateral consequences to a criminal defendant"—from *Ex parte Burt,* supra, to *Ex parte Sewell,* 606 S.W.2d 924 (Tex.Cr.App.1980) —the Court pointed out in one way or another that the applicant was then confined under a felony conviction.

dure, and faults the dissenting opinion for flouting them. *Ibid.*

It is solely the "restraint" part of his opinion that we borrowed in *Ormsby.* Compare *Guzman,* at 389, with *Ormsby,* at 132. However, nowhere in all of Article 11.07 does the term "restraint" appear.[6] Article 11.07 is reserved for an applicant in "confinement," which by definition is a harsher condition than "restraint." Compare Article 11.21 with Article 11.22. Therefore, as all decisions from *Burt* through *Guzman* to *Sewell* held, unless an applicant is confined pursuant to a commitment for a felony conviction, a postconviction application for habeas corpus relief from collateral consequences of another conviction will not lie under Article 11.07.[7]

Our error in *Ormsby* was in accepting too quickly the "restraint" part of the Odom concurrence without realizing that, like all decisions to that point, he too recognized that an applicant must then be confined for a felony conviction before seeking to avoid collateral consequences of another alleged void conviction from which he had been discharged. The implicit finding in *Ormsby* that Article 11.07, §§ 2 and 3, authorized the application for habeas corpus and the relief there granted is rejected.

■ That is not to say, however, that one who is at large but claims he may suffer "restraints" from collateral consequences of a prior felony conviction is barred from seeking relief by way of habeas corpus. To preserve that protection constitutionally provided through The Great Writ, Article I, § 12, courts may apply as pertinent to felony convictions the rationale of *Ex parte Crosley,* 548 S.W.2d 409 (Tex. Cr.App.1977), with respect to misdemeanor convictions, *viz:*

> "Both county and district courts have original jurisdiction in habeas corpus proceedings when attacks are made upon the validity of misdemeanor convictions; see Article 5, Section 8 of the Constitution of Texas; Article 11.05 and 11.09, V.A.C.C.P., and petitioners have a right of appeal from an order denying relief.
>
> \* \* \* \* \* \*
>
> \* \* \* \* Even though the applicant may have been discharged from confinement, collateral legal consequences of his conviction may entitle him to relief. [citations omitted]. The applicant is entitled to have a hearing on the allegations which he has made."

See also *Ex parte Phelper,* 433 S.W.2d 897, 898 (Tex.Cr.App.1968).

Granted it has been said that Article 11.07 provides the means to attack validity of a "final conviction in any felony case," e.g., *Mayes v. State,* 538 S.W.2d 637, 638 (Tex.Cr.App.1976), and by virtue of § 3 is the only means, *Ex parte Young,* 418 S.W.2d 824 (Tex.Cr.App.1967). However, the Court has consistently held that a conviction producing collateral legal consequences may entitle one to relief even though he has been discharged from confinement on that conviction. To condition his entitlement to relief upon another conviction and confinement and then invocation of Article 11.07 is to deny constitutional protection against "restraint in his liberty" short of confinement. To that extent The Great Writ is suspended contrary to the dictate of Article I, § 12.

Accordingly, along the lines of *Ex parte Crosley,* we hold that the constitutional and statutory provisions combine to provide a procedure for seeking, and jurisdiction, power and authority in district courts under Article V, § 8, to grant, relief and, failing there, for appeal to a court of appeals, subject to discretionary review by this Court.

Therefore, we dismiss the instant application purportedly brought pursuant to Article 11.07, §§ 2 and 3, for want of jurisdictional requisites to granting relief, towit: a final felony conviction and confinement, without prejudice to applicant's invoking the original jurisdiction of the district court

---

6. See and compare relevant provisions outlined *ante* at p. 351.

7. In his concurring opinion Judge Odom did not suggest otherwise; indeed, in note 1 he makes the point that applicant is confined under another conviction.

in cause no. 216199.[8] However, we leave open the question whether applicant is being restrained in his liberty.

The motion for rehearing is denied. The application is dismissed.

It is so ordered.

ONION, Presiding Judge, concurring.

Our original opinion in this cause concluded the application for post-conviction writ of habeas corpus under Article 11.07, V.A.C.C.P., was improvidently granted. That action was correct. Appellant entered a plea of guilty to felony theft, and was placed on probation. There was no final conviction. Subsequently his probation was terminated, the judgment of conviction was set aside and the indictment was dismissed. See Article 42.12, V.A.C.C.P. Article 11.07, supra, applies *only* to *final felony* convictions. This Court is thus without jurisdiction. On this basis I would concur in the result reached by the majority. I would not engage in a discussion of "confinement," "restraint," etc., necessary under Article 11.07, supra, when the matter before us is not properly here under Article 11.07, supra.

TEAGUE, Judge, dissenting.

On April 2, 1986, Michael John Renier (hereinafter "applicant") filed an "Application for Writ of Habeas Corpus" in the 182nd District Court of Harris County, Texas, with several exhibits and affidavits attached thereto. In it he alleged (1) that he had been "convicted of the offense of felony theft in cause number 216199 in the 180th District Court of Harris County, Texas" on August 21, 1974, (2) that "imposition of the sentence was suspended and ... [he] was placed on adult probation for a period of three (3) years," (3) that the "indictment upon which this conviction was based is void and fundamentally defective," and (4) that "I ... am being deprived of my ability to obtain gainful employment in my choice of careers due to ... [the] probated sentence I received."

Applicant requested that his "application be granted [writ of habeas corpus issued]," that "a copy of the indictment [be] forwarded to the Court of Criminal Appeals," and that "the Court of Criminal Appeals issue an order dismissing the indictment in cause number 216199."

Attached to his petition, applicant included (1) a copy of the indictment in cause number 216199, showing that it was filed in the 182nd District Court of Harris County, Texas on August 5, 1974, (2) a judgment of conviction in the same cause rendered by the 180th District Court of Harris County, Texas on August 21, 1974, assessing applicant's punishment at confinement in the penitentiary for a term of three years, (3) an order suspending the imposition of sentence and placing the applicant on adult probation for a term of three years, subject to certain conditions, (4) an order of the 180th Criminal District Court, signed September 17, 1975, terminating applicant's period of probation, dismissing the indictment, and setting aside the judgment of conviction in cause number 216199, and (5)

---

**8.** When it is boiled down the dissenting opinion would have this Court assert its original jurisdiction pursuant to Article 11.07, § 2, because the statute mandates that the writ "must be made returnable to [this Court]," *id.*, § 2(a), and it "shall issue by operation of law," *id.*, § 2(b). Pp. 373–374. However, dictates of §§ 2(c) and (d) that the issue is "the legality of the applicant's confinement," and the prescription in § 3 that this Court "enter its judgment remanding the prisoner to custody or ordering his release" cannot be lightly dismissed as an "unfortunate" "choice of terminology" on the part of the Legislature, as Judge Teague characterizes them. *Id.*, at 374, n. 33 and accompanying text. The term "petitioner's confinement under the felony conviction" was introduced in 1965, but germane terminology in § 3 has been constant, and legis-

lative intent and purpose in declaring the procedure "exclusive" and rendering any other proceeding "void and of no force and effect in discharging the prisoner" have been clear, since the original enactment in 1943. Judge Teague *excerpts only a portion of its emergency clause* in his note 32; he omitted the more relevant part, *viz:* "the necessity existing for prompt and adequate relief for deserving petitioners as well as the rights of the state in such cases [arising after final conviction]." Acts 1943, 48th Leg., Ch. 233, p. 354, § 2. Today, we continue to give effect to the legislative intent and purpose that an applicant for relief under Article 11.07, §§ 2 and 3 must be suffering collateral legal consequences of a final felony conviction while in *confinement in. order for this Court to grant relief.*

a certificate of service indicating that a copy of the petition had been mailed to the Harris County District Attorney's Office.

Applicant's petition was docketed by the District Clerk in the 180th District Court of Harris County, Texas as a "Post-Conviction" Habeas Corpus and assigned cause number 216199–B. Evidently, no writ of habeas corpus was ever actually issued.

On April 18, 1986, the Harris County District Attorney filed an answer in this cause (1) acknowledging receipt of applicant's petition, (2) alleging that "[a]pplicant is confined pursuant to the judgment and sentence of the 180th District Court of Harris County, Texas, in cause number 216199," (3) generally denying all factual allegations of the petition "except those supported by official court records," and (4) maintaining that the issues presented by applicant "can be resolved by the Court of Criminal Appeals upon review of official court records and without need for an evidentiary hearing."

On April 25, 1986, a judge presiding in the 180th District Court signed a "Proposed Order," finding "no controverted, previously unresolved facts material to the legality of Applicant's confinement," recommending that the requested relief be denied, and ordering the clerk to "prepare a transcript and transmit same to the Court of Criminal Appeals as provided by Article 11.07 of the Texas Code of Criminal Procedure."

We received this transcript on June 30, 1986. It contains a number of official court records which corroborate the factual allegations of applicant's petition, except that there is nothing, apart from an affidavit by applicant, to show that he is being deprived of his ability to obtain gainful employment in his chosen career on account of his conviction in cause number 216199.

There is nothing in the record to support the factual allegation of the District Attorney that applicant is presently confined pursuant to the judgment and sentence in cause number 216199, unless we are to understand that the District Attorney admits applicant is unable to obtain employ-

ment as a result of such conviction, and that this inability constitutes a confinement within the meaning of Chapter 11, V.A.C.C.P.

Applicant, for his part, does not allege, nor is there anything in the record to suggest, that he is, or ever was, confined on account of the judgment of conviction in question, unless we understand him to mean that an inability to obtain employment is a state of confinement under the habeas corpus laws of Texas.

On December 3, 1986, we ordered the cause to be filed and set for submission before this Court. However, in an unpublished opinion delivered February 25, 1987, we determined that our earlier order had been entered improvidently, and denied relief without further consideration of the merits.

Applicant then filed a motion for rehearing, which was granted on April 1, 1987. In it, he asserts that he is being "illegally restrained in his liberty" by virtue of the conviction in cause number 216199. Relying upon this Court's opinion in *Ex parte Ormsby*, 676 S.W.2d 130 (Tex.Cr.App.1984), he maintains (1) that the discharge of a probated sentence does not render moot a collateral attack upon the validity of that sentence so long as the conviction may have adverse collateral consequences for him, and (2) that he need not be in custody to seek habeas corpus relief by way of Art. 11.07, Sec. 2, V.A.C.C.P. Finally, he reiterates that his conviction in cause number 216199 is void because based upon a fundamentally defective indictment.

The Harris County District Attorney did not favor us with a reply to applicant's contentions.

The majority opinion in this cause has ordered that applicant's petition be dismissed without prejudice to his refiling it in the trial court, upon the ground that this Court has no jurisdiction to grant him relief under Art. 11.07, V.A.C.C.P. Two reasons have been assigned: (1) that applicant's conviction in cause number 216199 is not "final"; and (2) that applicant is not presently "confined". Evidently, the majority

believes these factors deprive this Court of original habeas corpus jurisdiction, at least insofar as Art. 11.07, V.A.C.C.P. is concerned.

For reasons to be set forth at length herein, I disagree on both counts. While I concede that writs of habeas corpus are not returnable to the Court of Criminal Appeals by authority of Art. 11.07, Sec. 2, V.A.C.C.P. unless the applicant challenges a final felony conviction, I am convinced that the applicant's felony conviction in this cause is, indeed, final. I do not agree that the absence of confinement exempts a writ of habeas corpus from mandatory return to this Court under Art. 11.07, Sec. 2, V.A.C.C.P. And finally, I do not agree that Art. 11.07, V.A.C.C.P. is a jurisdictional statute.

### Habeas Corpus—Original and Appellate Jurisdiction

The Court of Criminal Appeals has both original and appellate jurisdiction in habeas corpus. Each is subject to regulation by the Legislature, which has enacted laws limiting the exercise of these powers and prescribing procedures to effectuate them.

Those who are restrained in their liberty may apply for relief by petitioning a court of competent jurisdiction to issue the writ of habeas corpus, returnable to a place fixed by law, where the legality of such restraint is tested. Art. 11.01, V.A.C.C.P. A number of courts are authorized by the Texas Constitution to issue or grant writs of habeas corpus, including the Supreme Court and the Court of Criminal Appeals. Tex. Const. Art. 5, §§ 3, 5. Additionally, the Legislature has provided that:

The Court of Criminal Appeals, the District Courts, the County Courts, or any Judge of said Courts, have power to issue the writ of habeas corpus; and it is their duty, upon proper motion, to grant the writ under the rules prescribed by law.

Art. 11.05, V.A.C.C.P.

However, the Legislature has also prescribed that the legality of particular restraints be determined only by certain courts, depending upon a variety of factors, including the grade of the offense charged, and the stage of the criminal proceedings. It has done this by fixing the county or court to which certain writs must be made returnable.[1] The court of return, not the issuing court, has authority to grant or deny relief under the writ.[2]

The fact that a court with the authority and obligation to issue writs of habeas corpus sits only in a county to which the writ may not be returnable does not mean that such court is without jurisdiction or under no duty to issue the writ returnable to the proper county or court. In short, any court whose original habeas corpus jurisdiction has been properly invoked should not refuse to issue the writ, but is charged by law to issue it and to order that return be made to the county or court prescribed by law, according to the procedures set forth in Chapter 11 of the Code of Criminal Procedure. Art. 11.05, V.A.C.C.P.

The authority of the Court of Criminal Appeals to issue writs of habeas corpus is virtually unlimited, extending to both civil

---

1. By "return" is meant "the report made by the officer or person charged with serving the writ of habeas corpus, and also the answer made by the person served with such writ." Art. 11.55, V.A.C.C.P.

It is the duty of the judge to whom application is made to determine the county of return, and to issue the writ returnable to that county. *Ex parte Campbell*, 565 S.W.2d 942 (Tex.Cr.App. 1978). Articles 11.06, 11.07, and 11.10, V.A.C.C.P., which establish the place to which writs of habeas corpus are returnable, do not affect the jurisdiction of courts to issue the writ, "but only provide[ ] for the orderly procedural application of its use." *Campbell,* supra at 944.

2. The fact that a court has authority to issue the writ of habeas corpus does not automatically confer upon it the authority to grant relief. *Ex parte Rubison,* 170 Tex.Cr.R. 314, 340 S.W.2d 815 (1960); *Ex parte Patterson,* 139 Tex.Cr.R. 489, 141 S.W.2d 319 (1940). Cf., *Ex parte Angus,* 28 Tex.Cr.R. 293, 12 S.W. 1099 (1890). Such power rests exclusively with the court to which return is made. See, *Ex parte Woodward,* 619 S.W.2d 179 (Tex.Cr.App.1981); *Ex parte Andrus,* 69 Tex.Cr.R. 183, 153 S.W. 621 (Tex.Cr.App.1913). Accordingly, the procedural requirements of Arts. 11.06, 11.07, and 11.10, to the extent that they direct return of the writ to certain counties or courts, are akin to laws fixing venue.

and criminal cases.[3] *Ex parte Cvengros*, 384 S.W.2d 881 (Tex.Cr.App.1964). However, few writs have been made expressly returnable to this Court. Therefore, like other courts with general authority to issue the writ, we are obliged by law to make it returnable to the place prescribed by the Legislature. The exercise of our original jurisdiction, and that of all other issuing courts, is subject to this limitation.

In every instance save one where the Legislature has expressly prescribed a place of return, it has designated a court or county other than the Court of Criminal Appeals. Only under Art. 11.07, Sec. 2, V.A.C.C.P. are writs of a particular class returnable to this Court. Thus, our original jurisdiction to both issue the writ and provide relief under it may be exercised only in these cases, and in others where the law does not expressly prescribe a different place of return.

**3.** Although the early case of *Ex parte Degener*, 30 Tex.App. 566, 17 S.W. 1111 (1891) is occasionally cited for this proposition, its modern formulation seems to derive from *State ex rel. Wilson v. Briggs*, 171 Tex.Cr.R. 479, 351 S.W.2d 892 (1961). See n. 9, post. Since then, this Court has prefaced a number of opinions with it, usually as a substitute for any closer analysis of this Court's authority to act. See e.g., *Ex parte Supercinski*, 561 S.W.2d 482 (Tex.Cr.App. 1977); *Ex parte Herrin*, 537 S.W.2d 33 (Tex.Cr. App.1976). In these opinions, it does not seem that the Court perceived any distinction between the authority to issue writs and the power to grant relief, even though the difference is of fundamental significance. Perhaps modern legal thinking is hostile to the subtle distinctions of common law writ practice. Yet there is nothing modern in the habeas corpus laws of this State.

**4.** The procedure, however, is somewhat different than for appeal from a judgment of conviction, and is now governed by Tex.R.App.Proc. 44 (formerly Art. 44.34, V.A.C.C.P.) rather than Tex.R.App.Proc. 40(b) and 41(b) (formerly Art. 40.09, V.A.C.C.P.) *Ex parte Bunch*, 519 S.W.2d 653 (Tex.Cr.App.1975).

**5.** The notion that refusal to issue a writ of habeas corpus does not constitute an appealable judgment derives from the early case of *Ex parte Ainsworth*, 27 Tex. 732 (1865), wherein the Supreme Court observed that:

denial of the writ by one judge is not conclusive against applicant, for he may apply to another and have the opinion of one or all of the judges as to the legality of his restraint.

On the other hand, our appellate jurisdiction extends to all criminal cases, including those arising in habeas corpus.[4] As always, a final judgment or order is a necessary predicate to appeal. *Ex parte Wade*, 147 Tex.Cr.R. 94, 178 S.W.2d 690 (1944); *Ex parte Strong*, 34 Tex.Cr.R. 309, 30 S.W. 666 (1895).[5] Since issuance of the writ, as opposed to granting or denying relief under it, is an essential prerequisite to the exercise of any court's original habeas corpus jurisdiction, the failure or refusal of a court to issue the writ is not an appealable event.[6] *Ex parte Noe*, 646 S.W.2d 230 (Tex.Cr.App.1983); *Ex parte Johnson*, 561 S.W.2d 841 (Tex.Cr.App.1978); *Ex parte Lozano*, 88 Tex.Cr.R. 112, 225 S.W. 59 (1920); *Ex parte Barnett*, 74 Tex.Cr.R. 136, 167 S.W. 845 (1914). In such case, the applicant's only remedy is to apply elsewhere. *Mayes v. State*, 538 S.W.2d 637 (Tex.Cr.App.1976); *Ex parte Blankenship*, 57 S.W. 646 (Tex.Cr.App.1900).[7]

This observation is as compelling today as it was then, given the changelessness of our habeas corpus laws, and has been invariably followed ever since.

**6.** Likewise, the dismissal of a writ by the issuing court, even after preliminary hearing to determine whether its issuance was proper, is unappealable because there has been no decision on the merits. *Ex parte Farrington*, 467 S.W.2d 479 (Tex.Cr.App.1971); *Ex parte Montgomery*, 153 Tex.Cr.R. 605, 223 S.W.2d 933 (1949); *Ex parte Thomas*, 61 Tex.Cr.R. 573, 136 S.W. 60 (1911); *Ex parte Strong*, 34 Tex.Cr.R. 309, 30 S.W. 666 (1895).

**7.** Still, the Court was not always happy with this result and, in *Blankenship*, supra at 647, lamented its necessity:

We might content ourselves simply with dismissing this appeal. We would, however, observe that it was the duty of the judge below not only to have granted the writ, but to have tried the case.... Of course, there are cases where, on inspection of the application, the judge should refuse to grant the writ in the first instance. These, however, are exceptions to the general rule. As a general proposition, the writ should be granted and the cause of the detention of the prisoner investigated.... As stated above, however, we hold that we have no jurisdiction to entertain the appeal in this case, and it is accordingly dismissed.

Evidently, it did not occur to the Court in *Blankenship* to issue the writ itself, although it unquestionably had authority to do so upon proper request. Moreover, issuance of the writ

Accordingly, where a court of return has denied relief to a habeas corpus applicant, he may pursue the ordinary appellate process to seek review of such decision, subject to the procedures prescribed by law. These procedures now require that direct appeal be taken to a Court of Appeals for the appropriate District, and that a further review may thereafter be had in this Court's discretion. See, *Ex parte Jordan*, 659 S.W.2d 827 (Tex.Cr.App.1983).

Our habeas corpus law has maintained this basic structure for at least 130 years. Nevertheless, the distinction between original and appellate jurisdiction has often become blurred, due in no small measure to the enactment in 1943 of what is now Art. 11.07, Sec. 2, V.A.C.C.P.

Prior to that time the Legislature had prescribed where writs of habeas corpus were returnable in felony cases based only upon whether the applicant had yet been indicted. Before indictment, the writ might be made returnable to any county in the State. Texas Code of Criminal Procedure, art. 123 (1856); art. 136 (1879); art. 156 (1895); art. 166 (1911), art. 118 (1925). See also, Art. 11.06, V.A.C.C.P. (1965). After indictment, return was required in the county where the indicted offense had been committed. Texas Code of Criminal Procedure, art. 124 (1856); art. 137 (1879); art. 157 (1895); art. 167 (1911); art. 119 (1925).

This created a situation in which the legality of a person's confinement or restraint, based on an indictment and final conviction, could be determined, and the applicant discharged, by any trial judge in the county where the offense had been committed, even after the highest appellate tribunal in the State had affirmed his conviction. Although the Legislature could

not curtail the constitutional jurisdiction of district courts to issue writs of habeas corpus, it could prescribe the place to which such writs were returnable and thereby prevent the discharge by those courts of applicants who had already been finally convicted.[8] This it sought to do by amending Code of Criminal Procedure, art. 119 (1925) to read, in part:

> After indictment found in any felony case, *and before conviction*, the writ must be made returnable in the county where the offense has been committed, on account of which the applicant stands indicted.
>
> *After final conviction* in any felony case the writ must be made returnable to the Court of Criminal Appeals of Texas at Austin, Texas.

Acts 1943, 48th Leg., p. 354, § 1 (emphasis added).

But since the Court of Criminal Appeals was not equipped, let alone inclined, to hold evidentiary hearings or conduct immediate examinations of existing trial court records, both of which were often necessary to determine the legality of a person's confinement or restraint, *Ex parte Rodriguez*, 169 Tex.Cr.R. 367, 334 S.W.2d 294 (1960), the Legislature also prescribed a special procedure applicable to the determination of writ applications after final conviction. Basically, this procedure left the trial courts not only with their constitutional and statutory authority to issue writs of habeas corpus, but with the power and responsibility "to ascertain the facts necessary for proper consideration of the issues involved."

Elsewhere in Chapter 11, this factfinding task is a responsibility of the court to

---

returnable to the trial court would have forced an appealable ruling on the merits of applicant's petition, which this Court apparently believed to be required by the Code of Criminal Procedure, art. 165 (1895) (now Art. 11.15, V.A.C.C.P.) See also, Code of Criminal Procedure, art. 155 (1895) (now Art. 11.05, V.A.C.C.P.); *Ex parte Fitzpatrick*, 167 Tex.Cr.R. 376, 320 S.W.2d 683 (1959); *Ex parte Carswell*, 395 S.W.2d 47 (Tex. Cr.App.1965).

**8.** District Courts once had unlimited constitutional authority to issue writs of habeas corpus.

Tex. Const. Art. 5, Sec. 8. The Constitution has since been amended and no longer expressly confers original habeas corpus jurisdiction on the district courts. However, even prior to amendment, the Legislature's authority to regulate the exercise of such jurisdiction by fixing the place to which writs were returnable was unquestioned. This Court is, of course, similarly situated, since the Constitution, even now, confers no greater original jurisdiction in habeas corpus upon this Court than it once did on the district courts.

which return is made, not of the court issuing the writ, since only the former is empowered to grant relief. See e.g., Arts. 11.40, 11.41, 11.44, V.A.C.C.P. and their predecessors. Thus the necessity of a different procedure where the writ is made returnable to a court which, as a practical matter, is in no position to conduct evidentiary hearings. See e.g., Arts. 11.41, 11.44, 11.45, 11.46, 11.47, 11.48, 11.49, 11.54, V.A. C.C.P. and their predecessors. Accordingly, the issuing court was charged with assembling the evidence and transmitting it to the court of return, which might remand the applicant "to custody" or release him "as the law and facts may justify." Lest there be any doubt that trial courts were not to grant relief in habeas corpus following indictment and final conviction of the applicant, it was further provided that, "[a]fter *conviction* the proceeding outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner." (Emphasis added) [9]

Without a single dissenting vote in either house, the Legislature, not purporting to affect the jurisdiction of district and county courts to issue writs of habeas corpus after final conviction, had nevertheless deprived them of the authority to grant relief in such cases by making all postconviction writs returnable to the Texas Court of Criminal Appeals. Although the strategy was challenged as an unconstitutional restriction on the authority of trial courts to discharge persons unlawfully convicted of crimes, it withstood the attack easily. See, *Ex parte Boman*, 160 Tex.Cr.R. 148, 268 S.W.2d 186 (1954).[10]

A more subtle difficulty, however, was implicit in the procedure itself. In the past, petitions for the writ of habeas corpus were made to this Court only rarely, since the writ was never returnable here. Nevertheless, appeals from a denial of habeas corpus relief in the trial courts were quite common. Consequently, many practitioners interpreted the procedural devices of Art. 119 as a form of expedited appeal, not as an exercise of this Court's original habeas corpus jurisdiction. When cases reached this Court as purported appeals under circumstances covered by Art. 119, the Court often observed that they were to be treated as original applications for the writ. See e.g., *Ex parte Geter*, 383 S.W.2d 405 (Tex.Cr.App.1964); *Ex parte Williams*, 169 Tex.Cr.R. 96, 331 S.W.2d 940 (1960); *Ex parte Gomez*, 241 S.W.2d 153 (Tex.Cr. App.1951); *Ex parte Clubb*, 155 Tex.Cr.R. 285, 234 S.W.2d 874 (1950); *Ex parte Pearce*, 230 S.W.2d 830 (Tex.Cr.App.1950); *Ex parte Benson*, 153 Tex.Cr.R. 598, 223 S.W.2d 934 (1949); *Ex parte Massey*, 149

**9.** See, *State ex rel. Wilson v. Briggs*, 171 Tex. Cr.R. 479, 351 S.W.2d 892 (1961), in which this Court issued the writ of prohibition to prevent a trial judge repeatedly ordering stays of execution by way of habeas corpus in a death penalty case which had already been affirmed by this Court on appeal. Averring, without analysis or authority, that this Court's power to issue writs of habeas corpus is "unlimited," and with only passing reference to article 119, Code of Criminal Procedure (1925, as amended), our decision to issue the writ of prohibition was principally based upon a practical, albeit jealous, regard for the finality of our own judgments. Accordingly, the writ issued "to enforce the [appellate] jurisdiction of this Court."

**10.** In spite of this, it was later opined by one commentator that Art. 119 "is of doubtful constitutionality" for precisely this reason. Cofer, *Observations on Habeas Corpus And Post-Conviction Relief in State and Federal Courts,* 28 TEX. B.J. 947, 948 (1965). Mr. Cofer argued:

The second paragraph of the Act of 1943 ... introduces an entirely additional treatment of the procedure in habeas corpus in criminal

cases; which is difficult to reconcile with Art. 5, Sec. 8 of the Constitution, which grants general and unrestricted jurisdiction to the district court and its judges to issue writs of habeas corpus. As the language is the same, and as broad as the language of Art. 5, Sec. 5, conferring power on the Court of Criminal Appeals, it is difficult to see how the legislature would have power to limit the right of a district court to grant, hear, and determine an application for a writ of habeas corpus after conviction.

These remarks, however, do not take account of the fact that the subject-matter jurisdiction of a court does not settle the right of a litigant to bring his action in that forum. Otherwise, virtually all laws fixing venue would be subject to constitutional attack. Clearly, the Legislature may provide for the orderly administration of remedies guaranteed by the Constitution without thereby eliminating their effectiveness or compromising the constitutional jurisdiction of the courts.

Tex.Cr.R. 172, 191 S.W.2d 877 (1946). By this the Court meant only that cases coming here pursuant to the provisions of Art. 119 (now Art. 11.07, Sec. 2) do, in fact, represent an exercise of this Court's original, as opposed to appellate, jurisdiction in habeas corpus.

Unfortunately, language from these opinions has occasionally been employed to support an exercise by this Court of original habeas corpus jurisdiction in cases not covered by Art. 11.07, Sec. 2 or its predecessors. There would, of course, be nothing remarkable in this fact, were it not that some of those cases undertook to provide relief without inquiring whether the Legislature had prescribed another court of return.[11]

In *Basaldua v. State*, 558 S.W.2d 2 (Tex. Cr.App.1977), for example, we elected to treat a purported appeal as an application for writ of habeas corpus filed originally in this Court. The irony is that, after carefully evaluating the limits placed upon our appellate jurisdiction by statute, we failed to determine whether our original habeas corpus jurisdiction was constrained in the same way.

Basaldua had been adjudged guilty of possessing marihuana, and his punishment assessed at confinement in the penitentiary for a term of three years. However, imposition of sentence was suspended, and Basaldua was placed on adult probation for three years, subject to certain conditions. He made no attempt to appeal this judgment, but later sought modification in the trial court of two conditions thought by him to be unreasonable. When his motion was denied, he gave notice of appeal to this Court.

Finding that we had no constitutional or statutory authority to entertain an appeal from the order of a trial court modifying or refusing to modify conditions of probation, we nevertheless concluded, without analysis, "that the facts raise a proper habeas corpus issue and fall within our habeas corpus jurisdiction." *Basaldua*, supra at 5.

In denying the existence of appellate jurisdiction under these facts, we relied heavily upon Article 5, Section 5 of the Texas Constitution, which subjects our appellate jurisdiction "to such exceptions and ... regulations as may be prescribed by law." Since the Legislature had not provided by statute for the appeal of cases such as *Basaldua*, we were not, therefore, authorized to entertain it on direct appeal.

However, Art. 5, Sec. 5 of the Constitution, as it stood at the time, also provided that:

> The Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and under such regulations as may be prescribed by law, issue such writs as may be necessary to enforce its own jurisdiction.

Whether this language was effective to subject the original habeas corpus jurisdiction of the Court to regulation by the Legislature is now moot. At least arguably (although the argument was never made) it was not, and might therefore be sufficient to explain our exercise of original habeas corpus jurisdiction in *Basaldua*, despite the language of Art. 11.07, Sec. 1, V.A.C.C.P.

Plainly, under the theory that persons on unrevoked felony probation have not been

---

**11.** In most of these cases the Legislature had not. Many involve contempt proceedings, both civil and criminal, for which Chapter 11, V.A.C. C.P. prescribes no county or court of return. See, *Ex parte Supercinski*, 561 S.W.2d 482 (Tex. Cr.App.1977); *Ex parte Cvengros*, 384 S.W.2d 881 (Tex.Cr.App.1964); *Ex parte Fitzpatrick*, 167 Tex.Cr.R. 376, 320 S.W.2d 683 (1959); *Ex parte Puente*, 166 Tex.Cr.R. 439, 314 S.W.2d 306 (1958); *Ex parte Degener*, 30 Tex.App. 566, 17 S.W. 1111 (1891). Others concern misdemeanor charges, also not governed by a mandatory return statute. See, *Ex parte Sheppard*, 548 S.W.2d 414 (Tex.Cr.App.1977); *Ex parte Crosley*, 548 S.W.2d 409 (Tex.Cr.App.1977); *Ex parte Herrin*, 537 S.W.2d 33 (Tex.Cr.App.1976); *Ex parte Phelper*, 433 S.W.2d 897 (Tex.Cr.App. 1968); *Ex parte Lynn*, 19 Tex.App. 120 (1885). Consequently, none of these cases represent an exercise by this Court of original habeas corpus jurisdiction to grant or deny relief under circumstances where the Legislature had expressly directed by statute that the writ be made returnable to a place other than the Court of Criminal Appeals.

finally convicted [12], Basaldua was restrained, if at all, on a felony charge, after indictment but before final conviction. Under such circumstances, Art. 11.07, Sec. 1, V.A.C.C.P. arguably requires that the writ of habeas corpus *"must* be made returnable in the county where the offense has been committed." (Emphasis added)

Assuming that this Court's original habeas corpus jurisdiction was not then subject to regulation by the Legislature, Art. 11.07 presumably would not have been construed as a legislative limitation upon the exercise of that jurisdiction by this Court. Since that time, however, Art. 5, Sec. 5 of the Constitution has been twice amended and, in pertinent part, now reads:

> *Subject to such regulations as may be prescribed by law,* the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari.

Tex. Const. Art. 5, Sec. 5 (emphasis added). See, S.J.R. No. 18, § 3, Acts 1977, 65th Leg., p. 3359, approved by the voters Nov. 8, 1977, eff. Jan. 1, 1978; S.J.R. No. 36, § 4, Acts 1979, 66th Leg., p. 3224, approved by the voters Nov. 4, 1980, eff. Sept. 1, 1981.

Thus, it is clear, at least since *Basaldua,* that the Legislature may limit by statute the exercise of this Court's power to determine issues raised by petition for writ of habeas corpus. Whether the same was true prior to 1978 has never been determined by this Court, even though the question might have been essential to our disposition of *Basaldua* and other cases.[13]

Since then, and in spite of the constitutional amendment which clearly subjects the original habeas corpus jurisdiction of this Court to regulation by the Legislature, we have nevertheless continued to provide relief, by an exercise of original jurisdiction, to applicants charged with, but according to settled case law not yet finally convicted of, felony offenses, without pausing to consider whether such writs are required by law to be returned in another court. Thus, in *Ex parte Payne,* 618 S.W.2d 380 (Tex.Cr.App.1981), the applicant was restrained pursuant to a nonfinal felony conviction and sought to invoke this Court's original habeas corpus jurisdiction by means of the procedure set out in Art. 11.07, Sec. 2, V.A.C.C.P. We held that, because his conviction was not final, Art. 11.07, Sec. 2 did not apply. However, without discussing the requirements of Art. 11.07, Sec. 1, we nevertheless issued the writ and granted him relief, relying on *Basaldua.*[14]

Again, in *Ex parte Shillings,* 641 S.W.2d 538 (Tex.Cr.App.1982), the applicant was indicted for a felony offense and, following her plea of guilty, was placed on probation. However, under authority of Art. 42.12, Sec. 3d, V.A.C.C.P., no adjudication of guilt was ever entered against her. Under these circumstances, the law is clear that she was never convicted at all, let alone finally convicted, and that the indictment remained pending during the period of her probation. Nevertheless, her petition for the writ of habeas corpus was filed originally with this Court and, despite the clear mandate of Art. 11.07, Sec. 1, we reached the merits of her claim and granted relief.[15]

**12.** See the discussion under *Final Conviction, post.*

**13.** For example, in *Ex parte Norvell,* 528 S.W.2d 129 (Tex.Cr.App.1975), we exercised our original habeas corpus jurisdiction to provide relief where the applicant's felony conviction was pending on appeal and, therefore, arguably not final.

**14.** Interestingly, given nearly identical circumstances, we have also held that a district court has authority to issue the writ and determine the merits of a petition for habeas corpus under the authority of Arts. 11.05, 11.08, and 11.23,

from which an appeal will lie to the Court of Appeals. *Ex parte Twyman,* 716 S.W.2d 951 (Tex.Cr.App.1986). Again, however, Art. 11.07, Sec. 1 was not mentioned in the opinion, even though its scope and purpose are nearly the same as Art. 11.08 and appear to dictate the same result.

**15.** Similarly, in *Ex parte Clear,* 573 S.W.2d 224 (Tex.Cr.App.1978), we entertained an original petition for writ of habeas corpus and granted relief where, prior to indictment in a felony case, the applicant was unlawfully subjected to the jurisdiction of a district court. In this instance, we failed to notice the provisions of Art.

These recent cases, and others from the past decade, demonstrate that inadequate attention has been paid by this Court to the regulatory significance of mandatory and prescriptive return statutes, other than Art. 11.07, Sec. 2, V.A.C.C.P. These statutes, although cast in language which may now seem archaic, were evidently intended to provide an orderly procedure for the adjudication of habeas corpus claims and to prescribe a proper forum for the resolution of each claim, from among the courts vested with original habeas corpus jurisdiction.

Arts. 11.06 and 11.07, Secs. 1 and 2, V.A.C.C.P. are procedural rules governing the exercise of original habeas corpus jurisdiction by this Court, the district courts, and the county courts. They are not a grant of statutory authority distinct from it.[16] Original jurisdiction is to be distinguished from appellate jurisdiction, not from the statutes intended to regulate the exercise of it. All of our habeas corpus cases, other than those which have come to us on direct appeal from the refusal of another court to grant relief or by discretionary review, invoke the original jurisdiction of this Court, the exercise of which is regulated in part by the provisions of Chapter 11, V.A.C.C.P.

### Habeas Corpus—Issuance and Return of the Writ

All statutes prescribing the county or court to which return must be made have the necessary effect of precluding other courts from granting relief under it. Since 1856, the Legislature has undertaken to prescribe the place of return for some writs of habeas corpus in Texas. The 1943 amendments to the Code of Criminal Procedure, art. 119 (1925), therefore, did not represent an exercise of legislative authority any different than the Legislature had been exercising all along. It merely altered the court of return for writs of a certain kind.

Article 1, Section 12 of the Texas Constitution, after providing that the writ of habeas corpus is a "writ of right" which "shall never be suspended," directs that the Legislature "enact laws to render the remedy speedy and effectual." See also, Art. 1.08, V.A.C.C.P. Laws requiring that return of the writ be made only in certain counties or to certain courts are of this kind. So long as such laws do not effectively suspend the writ, make it unavailable to persons confined or restrained in their liberty, or eliminate altogether the power of courts to employ it as a speedy and effectual remedy, the Constitution is not offended merely because a court with power to issue the writ is afforded no opportunity to grant relief under it.

Given this circumstance, one might suspect that the Legislature's determination of place to which return should be made would be clearly set out somewhere in Chapter 11, or its predecessor statutes, for every class of restraint or confinement where a court is empowered to issue the writ. But this has never been so. As we have seen, the original version of the Code (1856) looked only to whether an indictment had been found, and provided a different county of return for preindictment and postindictment writs. It did not prescribe a county or court of return where the applicant was confined or restrained pursuant to an unindictable offense, such as most misdemeanors. Nor has it ever provided the place of return in cases where the applicant is not charged with a criminal offense.

> Where the applicant is entitled to a writ or hearing on his petition and is denied such right, the Court of Criminal Appeals may hear the petition as an original proceeding.

As a general proposition, this statement has no precedent in the case law of Texas, nor should it be taken to authorize the granting of original habeas corpus relief by this Court in cases where the law specifically prescribes a different court of return.

11.06, V.A.C.C.P., which permit the writ to "be made returnable to any county in the State." Although the statute is not mandatory on its face, it is unlikely that the Legislature had this Court in mind.

**16.** In *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr. App.1967), which is widely considered to be a definitive explanation of postconviction habeas corpus procedure under Art. 11.07, Sec. 2, V.A. C.C.P., we stated:

In 1879, however, the Legislature added a provision authorizing, but not requiring, persons confined on misdemeanor charges to apply for a writ of habeas corpus to the county judge of the county where the offense was committed. Art. 139 (1879). It also replaced prior art. 125 (1856), which had authorized application to the District Judge for the district in which applicants "confined on a criminal accusation" had been indicted. The new provision authorized application to the same judge, but only if the applicant was "confined on a charge of felony" after indictment. Art. 138 (1879).

The Legislature then went on to prescribe that, where application had been made to a named judge under the circumstances set out in arts. 138 and 139, the judge was obliged to "issue the writ ... returnable in the county where the offense is charged in the indictment or information to have been committed." Art. 140 (1879).

The effect of these changes was to provide for the issuance and return of habeas corpus writs on behalf of applicants charged with misdemeanor offenses, but only if such persons were confined pursuant to an indictment or information, and only if they applied to the judge named in art. 139 (1879). Thus, the Legislature still had not prescribed a county or court of return where the applicant, charged with an unindictable misdemeanor offense, was either not confined or had not yet been formally charged by information. Moreover, no court of return was prescribed for writs issued to misdemeanor applicants by judges other than those described in art. 139 (1879). And so the matter remained until the 1943 amendments to art. 119 (1925 Code of Criminal Procedure).

Of course, misdemeanor applicants were left entirely unaffected by the enactment of what is now Art. 11.07, Sec. 2, V.A.C. C.P., since Arts. 139 and 140 of the 1879 Code were reenacted verbatim with each successive revision, becoming Arts. 121 and 122 in the 1925 version and Arts. 11.09 and 11.10 today.[17] After 1943, however, issuing courts had to contend with an additional criterion for determination of the place of return in felony cases—"final conviction."

In 1965 all of these statutes were reenacted in Chapter 11 of the most recent revision to the Code of Criminal Procedure. The county or court to which return should be made was identified only in Arts. 11.06, 11.07, and 11.10, V.A.C.C.P.

Article 11.06, V.A.C.C.P. provided, as had all its predecessors that, "[b]efore indictment found, the writ may be made returnable to any county in the State." Although it was never made expressly to cover only those cases in which the applicant was confined or restrained on a felony charge, its language seems to suggest this requirement. In any case, it clearly does not apply to cases in which the applicant is under indictment, charged either with a felony or with a misdemeanor.

The first paragraph of Art. 11.07, now section 1 of that statute, provided that "[a]fter indictment found in any felony case, and before conviction, the writ must be made returnable in the county where the offense has been committed." The second paragraph of Art. 11.07, now section 2 of that statute, provided that "[a]fter final conviction in any felony case, the writ must be made returnable to the Court of Criminal Appeals of Texas at Austin, Texas." The Legislature did not disclose any reason

---

**17.** Taken together, and as applied to misdemeanor applicants, these two statutes read in part:

> If a person is confined on a charge of misdemeanor, he may apply to the county judge of the county in which the misdemeanor is charged to have been committed ... [who shall] issue the writ returnable ... in the county where the offense is charged in the ... information to have been committed.

This provision is permissive, rather than mandatory. *Garber v. State,* 667 S.W.2d 611 (Tex.App.

8th Dist.1984); *Ex parte Springfield,* 28 Tex. Cr.R. 27, 11 S.W. 677; *Ex parte Trader,* 24 Tex.Cr.R. 393, 6 S.W. 533. Cf., *Ex parte Gregory,* 20 Tex.Cr.R. 210 (1886). It does not purport to forbid application to any other court upon which has been conferred original habeas corpus jurisdiction by the Constitution and laws of Texas. Where application has been made to another such court, no statute expressly prescribes a court or county of return.

for using the term "final conviction" in this paragraph and the term "conviction" in the previous paragraph, nor is any rationale for the distinction apparent on the statute's face. Both terms are widely used throughout the penal and procedural laws of this State, but are nowhere defined, even though they have been held to mean different things in various contexts.

Taking our current statutes together, in light of their checkered history, it appears that the Legislature has prescribed the county or court of return for writs of habeas corpus under the following circumstances:

(1) When a person restrained in his liberty on a felony charge before indictment, the issuing court may make the writ returnable to any county in the State. (Art. 11.06, V.A.C.C.P.)

(2) When a person is restrained in his liberty on a felony charge after indictment, but before conviction, the issuing court must make the writ returnable to the county where the offense has been committed. (Art. 11.07, Sec. 1, V.A.C.C.P.)

(3) When a person is restrained in his liberty on a felony charge after final conviction, the issuing court must make the writ returnable to the Court of Criminal Appeals. (Art. 11.07, Sec. 2, V.A.C.C.P.)

(4) When a person is confined on a felony charge after indictment, but before final conviction, and he applies to the judge of the court in which he is indicted, that judge must issue the writ returnable in the county where the offense is charged in the indictment to have been committed. (Arts. 11.08 and 11.10, in light of 11.07, Sec. 2, V.A.C.C.P.)

(5) When a person is confined on a misdemeanor charge, and he applies to the county judge of the county in which the misdemeanor is charged to have been committed, that judge must issue the writ returnable in the county where the offense is charged in the information to have been committed. (Arts. 11.09, 11.-10, V.A.C.C.P.)

In all other circumstances where a person is "restrained in his liberty" and may apply to any court with jurisdiction to issue the writ of habeas corpus, the Legislature has not prescribed any court or county to which the issuing court may or must make its writ returnable. These circumstances include, but are not necessarily limited to, the following cases:

(1) When a person is confined or restrained on a misdemeanor charge and does not apply to the county judge of the county in which the misdemeanor is charged to have been committed.

(2) When a person is confined or restrained on a misdemeanor charge before an information has been filed, formally charging him with the offense.

(3) Under a variety of other circumstances, such as where a person, not charged with a criminal offense, is restrained of his liberty under an order of contempt or by a private person not acting pursuant to governmental authority.

For reasons to be developed shortly, I would find that the instant cause falls within that category of writs which must be made returnable to the Court of Criminal Appeals, pursuant to the requirements of Art. 11.07, Sec. 2, V.A.C.C.P.

### Final Conviction

As previously noted, writs of habeas corpus are returnable to the Court of Criminal Appeals under Art. 11.07, Sec. 2, V.A.C.C.P. only after the applicant has been finally convicted in a felony case. In the instant cause, the applicant was adjudged guilty of a felony, but imposition of sentence was suspended, and he was placed on adult probation.

This Court has often said that an unrevoked probated sentence does not amount to a final conviction. See e.g., *Ex parte Twyman*, 716 S.W.2d 951 (Tex.Cr.App. 1986); *Ex parte Payne*, 618 S.W.2d 380 (Tex.Cr.App.1981); *Ex parte Murchison*, 560 S.W.2d 654 (Tex.Cr.App.1978); *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.

1977).[18] At best such talk is peculiar. The evident purpose of the adult probation law in this State, unembellished with the plethora of special procedures which now adorn Art. 42.12, V.A.C.C.P., is to provide an alternative to incarceration. It is not an alternative to conviction.

In the ordinary case, when a person has been convicted of a criminal offense, either by judge or jury, upon a plea of guilty, not guilty, or nolo contendere, and he is not ineligible for probation, the trial judge may, and in some cases must, suspend the imposition of sentence upon the condition that such person successfully complete a term of scrutiny by the court, during which he is held to a standard of conduct more rigorous than that to which other citizens are subject. Successful completion of this regimen necessarily means that he will never be obliged to serve a period of incarceration for his offense. It does not necessarily mean anything else.

Therefore, in the ordinary case, a discharge from probation, without more, does not mean that the probationer has been unconvicted. It only means that he has successfully avoided incarceration, which would otherwise have been the necessary consequence of his conviction.

The word "conviction" is not defined in our penal laws, and considerable force can be put behind the proposition that it means different things in different statutes. Specifically, an argument can be made that the word means "verdict of guilt" in some places and "judgment on the verdict of guilt" in others.[19] See, *McCarter v. State*, 527 S.W.2d 296 (Tex.Cr.App.1975); *Whan v. State*, 485 S.W.2d 275 (Tex.Cr.App.1972); *Ex parte Hayden*, 152 Tex.Cr.R. 517, 215 S.W.2d 620 (1948); *Goss v. State*, 107 Tex. Cr.R. 659, 298 S.W. 585 (1927).

As for "finality," the term has a variety of substantive and procedural consequences, all of which are closely related. For example, a matter is often said to be final when it becomes appealable. Since only judgments of conviction, as opposed to verdicts of guilt, are reviewable directly, it seems unlikely that the term "final conviction" should ever be held to mean something different from "final judgment of conviction." Thus, the existence of a "final conviction" is ordinarily a prerequisite to appeal insofar as a judgment of conviction is not directly reviewable by a higher court unless all proceedings in the lower court are complete.

Still, the Legislature is at liberty to prescribe the circumstances under which an appeal may be taken, and can authorize appellate review of matters which would otherwise be considered interlocutory. In criminal cases, the judgment of conviction is appealable, as a general rule, when sentence has been pronounced or suspended in

18. To be distinguished are those cases permitting proof of prior probated sentences, not successfully discharged, at the punishment phase of a subsequent prosecution or to impeach any witness. See e.g., *Hogue v. State*, 711 S.W.2d 9 (Tex.Cr.App.1986); *Brown v. State*, 716 S.W.2d 939 (Tex.Cr.App.1986); *Redman v. State*, 533 S.W.2d 29 (Tex.Cr.App.1976); *Martin v. State*, 491 S.W.2d 928 (Tex.Cr.App.1973); *Valdez v. State*, 462 S.W.2d 24 (Tex.Cr.App.1971). But see, *Trippell v. State*, 535 S.W.2d 178 (Tex.Cr.App.1976). These decisions, in spite of occasional language suggesting otherwise, are properly grounded on express statutory authority and not on a judicial interpretation of the terms "conviction" and "final conviction." See, Arts. 37.07 and 38.29, V.A.C.C.P.

19. Clearly, the term "convicted" will always be problematical. As the U.S. Supreme Court observed in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 112, n. 6, 103 S.Ct. 986, 991, n. 6, 74 L.Ed.2d 845, 854, n. 6 (1983):

To be sure, the terms "convicted" or "conviction" do not have the same meaning in every federal statute. In some statutes those terms specifically are made to apply to one whose guilty plea has been accepted whether or not a final judgment has been entered ... In other federal statutes, however, the term "convicted" is clearly limited to persons against whom a final judgment has been entered.

The matter stands in much the same way under Texas law. Most often, however, this Court has construed the term "conviction" to mean a judgment of guilt and the assessment of punishment. See e.g., *Faurier v. State*, 528 S.W.2d 263 (Tex.Cr.App.1975). In addition, we have sometimes also construed it to mean "final conviction", a term full of problems in its own right. See e.g., *Thornton v. State*, 576 S.W.2d 407 (Tex.Cr.App.1979, on rehearing). Texas criminal jurisprudence would stand to considerable benefit from careful legislative attention to this problem.

open court by the trial judge. It is from this event that the time to perfect an appeal begins to run. See, Tex.R.App.Proc. 41(b)(1), formerly Art. 44.08(b), (c), V.A.C. C.P. Consequently, in this sense, "final conviction" means a judgment of conviction which is appealable. See e.g., *Glaze v. State*, 675 S.W.2d 768 (Tex.Cr.App.1984); *Terry v. State*, 30 Tex.App. 408, 17 S.W. 1075 (1891).

In other contexts, however, we routinely employ the term "final conviction" to mean something slightly different. When a judgment of conviction is actually appealed, its execution is delayed pending final disposition by the reviewing court. Until such court issues its mandate affirming the conviction, the judgment might be set aside and an acquittal or new trial ordered. Obviously, while the judgment is subject to this kind of review, it would be anomolous to permit its enforcement. Accordingly, the law provides that all further proceedings in the trial court are suspended during pendency of the appeal. See, Tex.R.App. Proc. 40(b)(2), formerly Art. 44.11, V.A.C. C.P. Under these circumstances, we also say that the conviction is not final. In this sense, however, "final conviction" means a judgment of conviction which is not subject to direct, nonextraordinary review,[20] either because the time to perfect an appeal has passed or because the appellate process has been exhausted without reversal of the conviction. See e.g., *Jones v. State*, 711 S.W.2d 634 (Tex.Cr.App.1986); *Carter v. State*, 510 S.W.2d 323 (Tex.Cr.App.1974).

A criminal defendant who has been placed on probation and is serving his probationary term ordinarily has a judgment

of conviction entered against him. Indeed, it is this judgment which distinguishes his status from that of a person who has been placed on what is generally called "deferred adjudication." See, Art. 42.12, Sec. 3d, V.A.C.C.P; *Ex Parte Laday*, 594 S.W.2d 102 (Tex.Cr.App.1980); *McNew v. State*, 608 S.W.2d 166 (Tex.Cr.App.1978, on original submission; 1980, on rehearing). A judgment of conviction which suspends the imposition of sentence and places the defendant on probation is an appealable event, unlike an order deferring adjudication of guilt. *Rincon v. State*, 615 S.W.2d 746, 747 (Tex.Cr.App.1981); *Fitzpatrick v. State*, 458 S.W.2d 924 (Tex.Cr.App.1970). And, like other appealable judgments, it is no longer subject to direct, nonextraordinary review after the time to perfect an appeal has passed. *Hoskins v. State*, 425 S.W.2d 825 (Tex.Cr.App.1968, on rehearing); *Campbell v. State*, 420 S.W.2d 715 (Tex.Cr.App.1967); *Chavez v. State*, 375 S.W.2d 729 (Tex.Cr.App.1964); *Miller v. State*, 330 S.W.2d 466 (Tex.Cr.App.1959); *Rash v. State*, 168 Tex.Cr.R. 33, 323 S.W.2d 53 (1959, on rehearing). See also, *Dinnery v. State*, 592 S.W.2d 343, 349 (Tex.Cr.App.1980, on rehearing); *Brooks v. State*, 459 S.W.2d 640 (Tex.Cr.App.1970). In the case of most judgments, this would mean that it had become final, in both of the senses discussed thusfar.

To discover the basis for this Court's thinking that a person on unrevoked felony probation has not been finally convicted, we must turn to an examination of this State's original "Suspended Sentence Law." [21] Under that statute, the Court

---

**20.** Habeas corpus and other methods of collateral attack are extraordinary remedies. Even though an otherwise final judgment of conviction is theoretically susceptible to attack by extraordinary methods, we do not typically regard it as nonfinal.

**21.** This statute was first enacted by the Legislature in 1911. See, Acts 1911, 32nd Leg., p. 67, ch. 44. In that year, the fourth revision of our Code of Criminal Procedure was also passed and, consequently, the new law was not assigned an official place in the revised Code. In 1912, the Act was declared unconstitutional by this Court in *Snodgrass v. State*, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912) and *Snodgrass v. State*,

67 Tex.Cr.R. 648, 150 S.W. 178 (1912). A substantially revised version was, therefore, reenacted a year later (Acts 1913, 33rd Leg., p. 8, ch. 7), and unofficially codified as Articles 865b through 865i of the 1911 Code. See, Vernon's Criminal Statutes of Texas (1916). The constitutionality of this Act was upheld the same year in *Baker v. State*, 70 Tex.Cr.R. 618, 158 S.W. 998 (1913).

When the Code of Criminal Procedure was again revised in 1925, the Legislature officially codified the "Suspended Sentence Law" as Articles 776 through 781, and authorized the new Code to be published under a separate cover with the revised Penal Code. See, Acts 1925,

"consistently held that there is no appeal from a suspended sentence because it is not a final judgment from which an appeal may be taken." *Lamkin v. State*, 138 Tex. Cr.R. 311, 136 S.W.2d 225 (1940).[22] Rather, the judgment became final, and therefore appealable, only if and when the suspended sentence was revoked, at which time the court "pronounce[d] sentence upon the original judgment of conviction."[23] Arts. 778, 779, Code Criminal Procedure (1925); Arts. 865c, 865e, Code of Criminal Procedure (1911) in 2 Vernon's Criminal Statutes of Texas (1916). See also, *Bierman v. State*, 73 Tex.Cr.R. 284, 164 S.W. 840 (1914); *Jones v. State*, 103 Tex.Cr.R. 589, 281 S.W. 1072 (1926). Frequently, and not surprisingly, this procedure caused long delays between the trial of a cause and its appeal, subjecting the ultimate validity of a conviction to direct review years after it had been entered, and to considerable uncertainty during the interim.

Accordingly, the Legislature amended Art. 779 shortly after *Lamkin* was reported to expressly provide that "no right of appeal shall exist to test the validity of the judgment of conviction, sentence upon which was suspended." This, however, had the effect of entirely eliminating appellate review of judgments when the sentence had been suspended, rather than re-

39th Leg., p. 282, ch. 104. Article 776a was added in 1931 (Acts 1931, 42nd Leg., p. 65, ch. 43, § 4), and Articles 777 and 779 were amended in 1941. See, Acts 1941, 47th Leg., p. 1334, ch. 602.

In 1947, the first "Adult Probation and Parole Law" passed the Legislature, without repealing the "Suspended Sentence Law" (Acts 1947, 50th Leg., p. 1049, ch. 452), and was unofficially codified as Article 781b in Vernon's Texas Code of Criminal Procedure (1925). Section 17 of the Act was repealed in 1953. See, Acts 1953, 53rd Leg., p. 489, ch. 175, § 2. Four years later, the "Adult Probation and Parole Law of 1957" repealed and replaced the 1947 Act, as amended, but again expressly exempted from repeal the "Suspended Sentence Law." See, Acts 1957, 55th Leg., p. 466, ch. 226. This statute was then codified unofficially as Article 781d of Vernon's Texas Code of Criminal Procedure (1925). The Act was then further amended in 1959. See, Acts 1959, 56th Leg., p. 1081, ch. 492, § 1. Finally, as a part of the current revision of the Code of Criminal Procedure, the "Adult Probation and Parole Act of 1957," as amended, was officially codified as Art. 42.12 of the Code. See, Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722. Also at this time, the "Suspended Sentence Law" was deleted from the statutes by a general repealer section. Since 1965, Art. 42.12 has been amended by the Legislature more than 50 times.

**22.** Evidently, the idea derives from *Ex parte Coots*, 85 Tex.Cr.R. 334, 212 S.W. 173 (1919), wherein this Court opined that, pursuant to art. 865c, when sentence had been suspended "neither the verdict of conviction nor the judgment entered thereon ... [became] final" unless the accused was thereafter finally convicted of another felony and his suspended sentence revoked. In short, no sentence was ever pronounced, and the judgment of conviction, therefore, not yet appealable. See also, *Brittian v. State*, 85 Tex.Cr.R. 491, 214 S.W. 351 (1919); *Thomas v. State*, 87 Tex.Cr.R. 153, 219 S.W. 1100 (1920). "Finality" in this context clearly

meant a complete judgment and sentence in the trial court from which an appeal could be taken, not a conviction no longer subject to direct review.

**23.** The original Act provided that "[w]hen sentence is suspended at the request of the defendant no appeal shall lie from the judgment of conviction." See, Acts 1911, 32nd Leg., p. 67, ch. 44, § 3. In holding this Act unconstitutional, Presiding Judge Davidson, writing for this Court in *Snodgrass v. State*, 67 Tex.Cr.R. 648, 150 S.W. 178, 180–181 (1912), opined:

The Legislature has no power to authorize the district judge to suspend the law or right of appeal.... The act of the Thirty-Second Legislature not only authorizes the district judge to exercise pardoning power, but grants him the authority to set aside the right of appeal, and makes the action nonreviewable by the appellate courts, or any other authority in the state. Nor does any other terms of the act make provision for the right of appeal in case the suspension is set aside and the judgment made final.

Although Judge Harper, who wrote for the Court in the companion case of *Snodgrass v. State* 67 Tex.Cr.R. 615, 150 S.W. 162 (1912), evidently did not hold the same view, the opinion of Presiding Judge Davidson nevertheless influenced the Legislature in its passage of a revised "Suspended Sentence Law" the next year. See, Acts 1913, 33rd Leg., p. 8, ch. 7; 2 Vernon's Criminal Statutes of Texas: Code of Criminal Procedure, art. 865c et seq. (1916). The new Act provided in Section 2 that, when sentence was suspended, "neither the verdict of conviction nor the judgment entered thereon shall become final, except under the conditions and in the manner and at the time provided for by Section 4 of this Act." Section 4, in turn, provided that "[u]pon final conviction of the defendant of any other felony ... the court shall pronounce sentence upon the original judgment of conviction."

quiring that they be taken in a more timely manner. *Nicholson v. State,* 147 Tex.Cr.R. 93, 179 S.W.2d 554 (1944); *Millican v. State,* 145 Tex.Cr.R. 195, 167 S.W.2d 188 (1942). For this reason, many defendants actively sought to avoid the suspension of their sentences so that they could secure appellate review of their convictions. But this Court held that the decision to suspend sentence was a matter wholly within the discretion of the trial judge and, therefore, not subject to compulsion by a higher court. Consequently, when the Adult Probation and Parole Law, Art. 781b, Vernon's Texas Code of Criminal Procedure (1925), was enacted, the Legislature expressly provided in Sec. 5 that a probationer might appeal his conviction at the time he was placed on probation.

In *Gossett v. State,* 162 Tex.Cr.R. 52, 282 S.W.2d 59 (1955), this Court addressed the very difficult question of the effect to be given the new statute, in light of existing case law. Noting that a judgment of conviction is ordinarily not complete and appealable until sentence has been pronounced, and further that no sentence is pronounced when its imposition has been suspended and the accused placed on probation, this Court nevertheless held that the Legislature might lawfully provide for the appeal of a conviction prior to the pronouncement or imposition of sentence. Since the right to appeal is not governed by constitutional law, the Legislature is at liberty to confer it at any stage of a criminal proceeding, and to withhold it at others. This we found the Legislature had done by enacting Art. 781b, Sec. 5. In 1965, this statute was reenacted without substantive change as Art. 42.12, Sec. 8(b), V.A.C.C.P., and is the same today.[24]

Since then, no probationer has been denied the right to appeal a judgment of conviction against him upon the ground that such conviction isn't final until his probation has been revoked. Meanwhile, however, in a line of cases beginning with *Fetters v. State,* 108 Tex.Cr.R. 282, 1 S.W.2d 312, 313 (1927), and based upon the same notion that an unappealable conviction is not yet final, this Court held that a defendant's punishment could not be enhanced with a prior suspended sentence because:

> A judgment of conviction which is suspended does not become final until the suspended sentence has been revoked and is not regarded as a final judgment ... It therefore follows that it was necessary for the state to allege and prove a suspension of sentence and its revocation in order to show that a final judgment had been entered against the appellant for the crime of burglary.

As previously noted, however, our current Adult Probation Law, Art. 42.12, Sec. 8(b), V.A.C.C.P., coupled with Tex.R.App. Proc. 41(b)(1), provides that a judgment of conviction is fully complete in the trial court, and hence appealable, even if the imposition of sentence is suspended. Therefore, unlike under the prior Suspended Sentence Law, the judgment of conviction is not prevented from becoming "final" in the sense contemplated by *Fetters.* Nevertheless, for reasons not apparent on the face of our more recent opinions, we have continued to cite *Fetters* for the long obsolete proposition that an ordinary probationer has not yet been finally convicted. See e.g., *Payne,* supra at 381; *Todd v. State,* 598 S.W.2d 286, 291 (Tex.Cr.App. 1980). See also, *Ex parte Brown,* 662

---

**24.** Art. 42.12, Sec. 8(b) now provides in part that:

> The right of the probationer to appeal to the Court of Appeals for a review of the trial and conviction, as provided by law, shall be accorded the probationer at the time he is placed on probation. When he is notified that his probation is revoked for violation of the conditions of probation and he is called on to serve a sentence in jail or in an institution operated by the Department of Corrections, he may appeal the revocation.

Obviously, two significant events are contemplated by this statute: conviction and the revocation of probation. That the first should be appealable, and that the appeal should be taken when the accused is convicted and placed on probation, "as provided by law," cannot but mean, as in other cases, that the conviction will become unappealable if not taken within the time prescribed by law. See, *McMillan v. State,* 166 Tex.Cr.R. 15, 310 S.W.2d 116 (1958); *Pitts v. State,* 442 S.W.2d 389 (Tex.Cr.App.1969).

S.W.2d 3 (Tex.Cr.App.1983) (relying on *Payne*).

Whatever else the term "final conviction" may have meant at various times in the history of this State's criminal jurisprudence, it has always included convictions which are not appealable, have never been appealed, and cannot be appealed at any time in the future. Yet, a probationer whose felony conviction meets all of these criteria is still held not to have been finally convicted. This proposition may once have made sense when interpretation of the Suspended Sentence Law led this Court to conclude that the underlying judgment of conviction could only be appealed following revocation of the suspended sentence. But, since enactment of the Adult Probation and Parole Law in 1947, this has not

been so. Instead, the underlying conviction may be appealed when sentence is suspended and the defendant placed on probation. To say that it is not a final judgment from that moment forward is simply a gross misinterpretation of prior case law.[25]

Nonetheless, Art. 42.12, Sec. 7, V.A.C.C.P. provides in part that, upon a defendant's satisfactory completion of probation, the trial judge may, but is evidently not required to, set aside the jury's verdict of guilt, permit the defendant to withdraw his plea of guilty, and dismiss any instrument charging him with the offense for which he was placed on probation.[26] If he does so, the defendant "shall thereafter be released from all penalties and disabilities resulting

---

**25.** Today, the sentence is a part of the judgment, not an instrument or event distinct from it as in years past. See, Arts. 42.01, 42.02, V.A.C.C.P. Still, the pronouncement of sentence is usually a fundamental prerequisite to the appealability or finality of a conviction in the trial court.

A sentence, as defined by Art. 42.02, Vernon's Ann.C.C.C.P. [sic], is required to be pronounced in all cases before an appeal is taken, except in death penalty cases and in probation cases where imposition of sentence is suspended.

*Woods v. State,* 532 S.W.2d 608, 610 (Tex.Cr.App.1976).

Thus, before a conviction may become "final" in the trial court, i.e. complete and appealable, a sentence usually must be pronounced. This is true simply because the date of sentence is the point from which the time for giving notice of appeal begins to run. But, because the pronouncement of sentence is not a prerequisite to appeal in cases where sentence is suspended and the defendant placed on probation, it follows that the judgment of conviction is complete in such cases without the necessity of a sentence. To the extent that "final conviction" refers to a complete and appealable judgment of conviction in the trial court, it is archaic in the extreme to maintain that an unrevoked probationer has not been finally convicted, since the judgment of conviction against him is as complete as is legally possible, even absent the pronouncement of sentence. Cf. *Eastwood v. State,* 538 S.W.2d 107 (Tex.Cr.App.1976); *Pittman v. State,* 546 S.W.2d 623 (Tex.Cr.App.1977).

**26.** *Payton v. State,* 572 S.W.2d 677, 678 (Tex.Cr.App.1978) appears to assume that a defendant who has successfully discharged his probation must be "released from all penalties and disabilities" under Art. 42.12, Sec. 7, V.A.C.C.P. This is by no means clear from the language of the statute itself, which states ambiguously that the

"court *may* set aside the verdict or permit the defendant to withdraw his plea, and *shall* dismiss the accusation, complaint, information or indictment against such defendant ..." (Emphasis added) Clearly, on its face, a part of this language is permissive and a part mandatory.

Nevertheless, in *United States v. Gray,* 692 F.2d 352 (5th Cir.1982), the United States Court of Appeals for the Fifth Circuit interpreted *Payton* to hold that the statute was mandatory, that the "conviction was vacated by operation of state law upon ... successful completion of probation." In spite of language from the United States Supreme Court that "the fact of a felony conviction imposes a firearm disability [for purposes of federal prosecution under 18 U.S.C. § 1202] until the conviction is vacated ...," *Lewis v. United States,* 445 U.S. 55, 60–61, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980), the Fifth Circuit held that Gray was properly amenable to prosecution even though his Texas conviction had been vacated under Texas law.

This Court is in no position to undertake an independent construction of 18 U.S.C. § 1202, but is obliged to accept whatever interpretation of it the federal courts make. However, the meaning of Art. 42.12, Sec. 7 is another matter, and in my view the Fifth Circuit erred by construing our law to mean that a discharged probationer is automatically entitled to a vacation of his conviction. To the extent that *Payton* suggested he is, we should overrule it.

When a probationer is discharged, the trial judge is permitted, but not required, to also set aside the verdict or allow the accused to withdraw his plea. Only if he does so will he be required to dismiss the accusation, and only then will the disabilities and penalties of law be lifted from the accused. See, *Ransonnette v. State,* 522 S.W.2d 509, 510–11 (Tex.Cr.App. 1975).

from the offense or crime of which he has been convicted or to which he has pleaded guilty." The only exception is "that proof of his said conviction or plea of guilty shall be made known to the court should the defendant be again convicted of any criminal offense." [27]

Evidently, our applicant in the instant cause finds himself in this most unusual posture. He has long since successfully discharged his probation, the indictment against him has been dismissed, his plea of guilty withdrawn, and the judgment of conviction set aside. Yet he still claims to labor under the disability of that which no longer exists. The reason, although slightly ironical, is perfectly clear on a close examination of the statute.

Art. 42.12, Sec. 7, V.A.C.C.P., if taken literally, amounts to a pardon.[28] *Samaniego v. State*, 647 S.W.2d 762 (Tex.App. 3rd Dist.1983). And a pardon, of course, for-

gives only the penalty; it does not vitiate the conviction. *Watkins v. State*, 572 S.W.2d 339 (Tex.Cr.App.1978). Art. 42.12, Sec. 7, V.A.C.C.P. is reminiscent of language quoted with approval by this Court in *Scrivnor v. State*, 113 Tex.Cr.R. 194, 20 S.W.2d 416 (1928), and taken from 20 Ruling Case Law § 40, p. 556:

> In the case of a full pardon, it relieves the punishment and blots out of existence the guilt of the offender, to such an extent that, in the law, he is as innocent as if he had never committed the offense.

Accordingly, this Court held in *Scrivnor* that a fully pardoned offense could not be used to enhance the punishment of an accused in subsequent prosecutions. See also, *Warren v. State*, 134 Tex.Cr.R. 71, 74 S.W.2d 1006 (1934).

Thirteen years later, however, the Court took a different view of the pardoning power and overruled *Scrivnor*:

---

**27.** The meaning of this proviso is hard to fathom. Presumably, it means to permit a verdict which has been set aside and an accusation which has been dismissed to influence a trial judge's sentencing discretion in future cases. Interestingly, it does not purport to allow proof of such matters before the jury in subsequent prosecutions. Since the jury may assess punishment, it seems unlikely that the proviso was intended to affect the assessment of punishment. Rather, it appears to be the Legislature's objective to encourage trial judges to take into account that a defendant was previously on probation in determining whether to place him on probation again.

However, this raises an additional problem. Judges are required to grant probation when recommended by the jury. A jury may recommend probation when, among other things, the defendant "has never before been convicted of a felony." Art. 42.12, Sec. 3a(a), V.A.C.C.P. To make matters even more interesting, the defendant must swear in advance of trial that he has not. A defendant whose prior felony conviction is pending appeal may lawfully swear that he has never been convicted of a felony. *Baker v. State*, 520 S.W.2d 782 (Tex.Cr.App.1975). Cf. *Cranfil v. State*, 525 S.W.2d 518 (Tex.Cr.App. 1975). But a defendant on unrevoked felony probation may not. *Baker v. State*, 519 S.W.2d 437 (Tex.Cr.App.1975). Neither may a defendant whose previously revoked probation is pending appeal. *Franklin v. State*, 523 S.W.2d 947 (Tex.Cr.App.1975). And finally, an accused whose prior felony conviction was vacated pursuant to Art. 42.12, Sec. 7, V.A.C.C.P., is likewise ineligible for probation in subsequent prosecutions. *Taylor v. State*, 612 S.W.2d 566 (Tex.Cr.

App.1981). Plainly, two different notions of "conviction" and "finality" are at work here.

**28.** The original "Suspended Sentence Law" was declared unconstitutional for precisely this reason. In *Snodgrass v. State*, 67 Tex.Cr.R. 615, 150 S.W. 162, 164 (Tex.Cr.App.1912, on original submission), this Court wrote:

> This law not only gives to district judges discretionary power to suspend the sentence of a person after he has been legally convicted of an offense, but also after lapse of time, upon a showing that he has been guilty of no other offense, to set aside the judgment of conviction, thus in terms conferring on them the power to grant pardons to persons convicted of crime.

Since the power to pardon was, and is, vested in the Governor by Article 4, Section 11 of the Texas Constitution, and might not be exercised by the other branches of government, it was held beyond the authority of the Legislature to confer such power upon the courts. See, Tex. Const. Art. 2, Sec. 1. On rehearing, we clarified this holding in the following words:

> In the original opinion we said and held: "That the power to suspend the sentence does not conflict with the power of the Governor to grant reprieves and pardons is settled by the decisions of the various courts." What we did hold was that the Legislature had no power to confer on the trial court authority to remit the punishment after a conviction had been obtained and penalty assessed by a verdict of the jury; this power being conferred on the Governor by the Constitution ...

*Snodgrass*, supra at 150 S.W. 167 (on rehearing).

The Governor can forgive the penalty, but he has no power to direct that the courts shall forget either the crime or the conviction.

*Jones v. State*, 141 Tex.Cr.R. 70, 147 S.W.2d 508, 511 (1941). Since then, the fact of a pardon has been consistently held not to affect the "conviction" or its "finality," unless perhaps the pardon was based upon a later determination of innocence. See, *Gaffney v. State*, 575 S.W.2d 537 (Tex. Cr.App.1978); *Runo v. State*, 556 S.W.2d 808 (Tex.Cr.App.1977); *Ex parte Smith*, 548 S.W.2d 410 (Tex.Cr.App.1977); *Logan v. State*, 448 S.W.2d 462 (Tex.Cr.App.1970); *Hankamer v. Templin*, 143 Tex. 572, 187 S.W.2d 549 (1945); *Square v. State*, 145 Tex.Cr.R. 219, 167 S.W.2d 192, 194 (1942, on rehearing).

Clearly, in the instant cause, this Court would not hold that the applicant hadn't been finally convicted if he had received a full pardon from the Executive. We should not hold otherwise when he has received a full pardon from the trial judge. Moreover, a literal interpretation of the statute would intrude upon the executive department of our government,[29] extend the plenary jurisdiction of trial courts beyond final judgments of conviction, and render superfluous the provisions of Art. 42.12, Sec. 3d, V.A.C.C.P. regarding deferred adjudications of guilt. I simply cannot construe a statute to do so much violence against fundamental precepts of our jurisprudence.

In light of the evident legislative purpose behind the predecessor of Art. 11.07, Sec. 2(a), which was to foreclose collateral attack upon judgments of conviction at the trial court level, I would hold that the term "final conviction," as it appears in Art. 11.07, Sec. 2, and the term "conviction," as it appears in Art. 11.07, Secs. 1 and 2, V.A.C.C.P., refers to an appealable judgment of conviction.[30] Such a construction of the language is not at varience with settled legal terminology in this State, and is supported by persuasive historical evidence and precedential authority.

Thus, after a trial court has entered an appealable judgment of conviction, including a judgment which suspends the imposition of sentence, any petition for the writ of habeas corpus which attacks the legality of a person's confinement or restraint un-

**29.** In violation of Tex.Const., Art. 2, Sec. 1. See, *Ex parte Giles*, 502 S.W.2d 774 (Tex.Cr.App. 1974); *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97 (Tex.Cr.App.1973); *Waggoner v. State*, 161 Tex.Cr.R. 242, 275 S.W.2d 821 (1955).

**30.** Hereafter, I would disapprove use of the term "final conviction" to mean only a conviction which is no longer subject to direct, nonextraordinary review. Naturally, judgments pending appeal may not be used to enhance the punishment of an accused at trial, since it would be anomolous to impose a more severe penalty on account of a conviction which is subject to reversal by direct, nonextraordinary means.

One of the most common penalties or disabilities suffered by those who have been convicted of crimes is that they may be punished more severely for subsequent crimes. Penal Code, §§ 12.42, 12.43. Interestingly, these statutes prescribe more severe penalties in every case where the accused has been "before convicted," except that a mandatory sentence of life imprisonment is prescribed for felony offenders who have "previously been finally convicted of two felony offenses." Penal Code § 12.42(d).

Assuming that there is some significant difference between a "conviction" and a "final conviction," the Legislature's language is striking in its disparity, and seems unequivocally to suggest that more severe penalties may lawfully be imposed in most cases upon offenders who have been convicted, but not finally convicted, before.

Of course, as it turns out, this isn't so. To the extent that "final conviction" is understood to mean a conviction no longer subject to direct attack, there must be a final conviction in every case of any enhanced penalty under Penal Code §§ 12.42 and 12.43. *Arbuckle v. State*, 132 Tex. Cr.R. 371, 105 S.W.2d 219 (1937). But see also, *Arbuckle*, supra at 222 (J. Lattimore, dissenting). Thus, no person against whom a judgment of conviction has once been entered may be assessed any enhanced penalty in subsequent prosecutions if, for example, the previous judgment of conviction was reversed on appeal for any reason. In short, for purposes of Penal code §§ 12.42 and 12.43, he has not been "before convicted." This Court has effectively held that the phrase means "before finally convicted" in the sense that the judgment is not only complete in the trial court but also no longer subject to direct, nonextraordinary review. See e.g., *Jones v. State*, 711 S.W.2d 634 (Tex.Cr.App. 1986); *Poore v. State*, 524 S.W.2d 294 (Tex.Cr. App.1975). Again, legislative attention to the functional ambiguities of these terms in various contexts is to be highly recommended.

der such judgment must, in my opinion, be made returnable to this Court. Such a holding would in no way affect the authority of trial judges to entertain and determine motions for new trial and motions in arrest of judgment during the period of time permitted by law. Nor would it be necessary to reach the merits of petitions for the writ of habeas corpus returned to this Court after a final judgment of conviction in the trial court when adequate relief was available by means of direct, nonextraordinary review.[31] It would merely mean that this Court has exclusive authority to determine the merits of a writ application and to grant relief under it after the trial court has entered an appealable judgment of conviction.

In any event, applicant in the instant cause has been finally convicted of a felony offense, irrespective of how one defines the term. The judgment against him became appealable at the moment sentence was suspended in open court, and his failure to seek appellate review of it soon ensured that it would not thereafter be subject to any direct, nonextraordinary attack. Neither the fact that his probation was successfully discharged nor that an order was subsequently entered purporting to set aside the judgment impugns the finality of his conviction in the least. *Twyman, Payne, Murchison, Zillender*, supra, and other cases to the same effect should be overruled to the extent they hold that a person on unrevoked felony probation has not been finally convicted. The majority errs, therefore, in holding on this basis that applicant's writ of habeas corpus in the instant cause is not returnable to this Court.

### Restraint and Confinement

The writ of habeas corpus is a vintage remedy in English and American law, and is the subject of special notice in the Texas Constitution. Article I, Sec. 12 requires the Legislature to provide by statute the procedures necessary "to render the remedy speedy and effectual." See also, Art. 1.08, V.A.C.C.P. To this end, Chapter 11 of the Code of Criminal Procedure was created, providing at the outset that "[t]he writ of habeas corpus is the remedy to be used when any person is *restrained* in his liberty," Art. 11.01, V.A.C.C.P., and that all Code provisions relating to it "shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it." Art. 11.04, V.A.C.C.P. (emphasis added).

With specific regard to Art. 11.07, Sec. 2, V.A.C.C.P., Judge Woodley, writing for a unanimous court in *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App.1967), opined that Art. 11.07 "[s]upplies statutory authority for the resolution of contested factual issues material on the question of whether the petitioner (more properly referred to an 'applicant' Art. 11.13 V.A.C.C.P.) is *illegally restrained* under a judgment of conviction in a felony case ..." 418 S.W.2d at 828–829 (emphasis added).

The emphasized language is interesting because Art. 11.07 does not use the word "restrain" at all. Instead, it at least intimates that the applicant must be confined. For example, upon filing an application, the convicting court is required by Sec. 2(c) and (d) to determine whether there are "previously unresolved facts material to the legality of applicant's *confinement*," and to gather evidence pertinent to the issue if such factual questions exist. (Emphasis added)

One might be inclined, for the sake of uniformity, to construe away the difference between "restrain" and "confine" were it not for the fact that both terms are specially defined in Chapter 11.

---

**31.** The reason for this is not, however, because a judgment of conviction pending appeal isn't a final conviction within the meaning of Art. 11.-07, Sec. 2, V.A.C.C.P., but rather because, as a general rule, habeas corpus, like other extraordinary remedies, is not to be used as a substitute for appeal. *Ex parte Powell*, 558 S.W.2d 480 (Tex.Cr.App.1977); *Ex parte McKay*, 82 Tex. Cr.R. 221, 199 S.W. 637 (1918). All extraordinary writs are available only when there is no other adequate remedy at law. *Ex parte Groves*, 571 S.W.2d 888 (Tex.Cr.App.1978). Thus, I would overrule the holding of cases such as *Ex parte Brown*, 662 S.W.2d 3 (Tex.Cr.App.1983), but reach the same result.

The words "confined", "imprisoned", "in custody", "confinement", "imprisonment", refer not only to the actual, corporeal and forcible detention of a person, but likewise to any coercive measures by threats, menaces or the fear of injury, whereby one person exercises a control over the person of another, and detains him within certain limits.

Art. 11.21, V.A.C.C.P.

By "restraint" is meant the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right.

Art. 11.22, V.A.C.C.P.

Both definitions date from the original Texas Code of Criminal Procedure (1856), where they appeared as Articles 137 and 138, respectively. Since then they have reappeared in all subsequent revisions of the Code (1879, 1895, 1911, 1925, 1965) and are with us today, just as they were in 1856, without any formal or substantive change whatsoever. Indeed, most of present Chapter 11 is identical in language and organization to its 1856 predecessor and to all intervening revisions of the Code.

In its first paragraph, the postconviction provisions of original Art. 119, Texas Code of Criminal Procedure, after the 1943 amendment, seemed to apply whether or not the applicant was confined. Yet later in the statute, the Legislature appeared to contemplate the necessity of confinement when it provided that, after hearing, the applicant should either be remanded "to custody" or released, and that such procedures were to be the exclusive postconviction means for "discharging the prisoner."

Nevertheless, the statute was further amended in 1967 in such a way as to create ambiguity upon this very point. Acts 1967, 60th Leg., p. 1734, ch. 659, § 7, eff. Aug. 28, 1967. The new language spoke indiscriminately in a single sentence both of "confinement under the felony conviction" and of "whether the petitioner is illegally restrained," evidently without a care for the fact that "confinement" and "restraint" had been defined by statute to mean different things for more than a hundred years. See and compare Arts. 11.21 and 11.22, V.A.C.C.P. (1965) with Code of Criminal Procedure, arts. 137 and 138 (1856).

Subsequent amendments have effected a number of other changes, and Art. 11.07 no longer refers to the illegal "restraint" of applicants, but only to their "confinement" or "custody." See, Acts 1973, 63rd Leg., p. 1271, ch. 465, § 2, eff. June 14, 1973; Acts 1977, 65th Leg., p. 1974, ch. 789, § 1, eff. Aug. 29, 1977; Acts 1979, 66th Leg., p. 1017, ch. 451, § 1, eff. Sept. 1, 1979. Once again, this seems to suggest that the Legislature may have intended to require that postconviction writs of habeas corpus in felony cases be made returnable to the Court of Criminal Appeals only when the applicant is confined.

However, as has already been observed, the predecessor of Art. 11.07, Sec. 2, V.A.C.C.P. was enacted solely to prevent collateral attack on final judgments of conviction in the trial courts of this State.[32] There is no suggestion on the face of Sec. 2(a), which alone prescribes the court of return for postconviction writs, or in the Act's legislative history, judicial construction of predecessor statutes, or practical effect of prior writ practice, that the Legislature had any other objective in mind. Indeed, it is all but certain that legislative use of the words "restraint" and "confinement" in Art. 11.07, Secs. 2 and 3, and their predecessors, was wholly indiscriminate, as has been judicial construction of this language

---

**32.** As usual, gleaning legislative intent from the chaff of House and Senate journals, files, and newspaper clippings is a tedious and usually unrewarding experience. They disclose nothing of our lawmakers' purpose in the case of the 1943 amendments to Art. 119, Texas Code of Criminal Procedure. Tape recorded committee meetings are, of course, not available for that year.

The emergency clause, such as it is, identifies "an imperative public necessity" in that "present statutes governing the writ of habeas corpus are inadequate to *fully* cover cases arising after final conviction ..." Acts 1943, 48th Leg., p. 355, § 2 (emphasis added). Given the majority's holding in the instant cause, 45 years later, it is at least clear that this legislative purpose has not been "fully" acheived.

ever since, beginning at least with *Ex parte Young,* supra.

A writ of habeas corpus is a writ of habeas corpus, regardless of the Court issuing it or the court to which it is returned. All writs of habeas corpus are, by definition, available "when any person is *restrained* in his liberty." Art. 11.01, V.A.C.C.P. (emphasis added). It is mandatory that such writs be made returnable to the Court of Criminal Appeals "[a]fter final conviction in *any* felony case." Art. 11.07, Sec. 2(a), V.A.C.C.P. (emphasis added). The provisions of Art. 11.07, Secs. 2 and 3 are merely procedural devices for the orderly administration of evidence-gathering in such cases, and do not modify the mandatory return provisions of Sec. 2(a). The unfortunate use of the word "confinement" in these procedural sections was unquestionably not meant by the Legislature as a limitation upon this Court's original habeas corpus jurisdiction, and need not be given such a construction even on a literal reading of the statute.[33] The prerequisite conditions for mandatory return to this Court are set forth in Art. 11.07, Sec. 2(a), and nowhere else.

Accordingly, the majority again errs in holding that writs of habeas corpus are not properly returnable to this Court under the provisions of Art. 11.07, Sec. 2(a) unless the applicant is confined. Because applicant's writ of habeas corpus has been properly returned to this Court, and its merits should now be determined, I dissent to its dismissal.

---

**33.** I use the word "unfortunate" because the Legislature's choice of terminology in Art. 11.07, Secs. 2 and 3, clearly does, on its face, provide a plausible basis for the majority's analysis, however wrongheaded I may believe it to be. It is difficult enough honestly to discern legislative intent without having to sort through the careless use of legal terminology in statutory amendments, particularly when that terminology has itself been created by the Legislature.